[S. F. No. 5257.   Department Two.—June 21, 1917.]

ALLETHIA RUNNELS et al., Respondents, v. UNITED
RAILROADS OF SAN FRANCISCO (a Corporation),
Appellant.

NEGLIGENCE—ELECTRIC STREET RAILROAD—CROSSING TRACK—DUTY OF
PEDESTRIANS AND DRIVERS OF VEHICLES.—The duty of a foot-
passenger or of the driver of a vehicle in crossing the tracks of
an electric street railroad is to exercise reasonable care for his own
protection. The duty of stopping, looking, and listening made in-
cumbent upon one about to cross the right of way of a steam rail-
road is not the rule governing the rights of foot-passengers and
vehicle drivers in venturing upon, crossing, or using the tracks
of a street railroad. The duty of such is no higher or different
in law from the duty of the company operating the electric car,
saving in the one particular that because the car is confined to its
tracks, vehicles and foot-passengers must give way to clear its
passage.

ID.—RELIANCE ON DUE CARE IN OPERATION OF APPROACHING CAR.—One
about to cross the tracks of a street railroad is entitled to act
upon the belief that the operatives of the railroad will upon their
part, obey the law and observe due care and caution.

ID.—CONTRIBUTORY NEGLIGENCE—CAR APPROACHING AT EXCESSIVE
SPEED—QUESTION FOR JURY.—Under the circumstances of this case,
the question of the contributory negligence of the driver of a
vehicle, in attempting to cross an electric street railroad track, in
front of an approaching car, which he saw when it was upward of
half a block away and moving at an excessive and unlawful speed,
was one of fact for the jury and not a matter of law for the court.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order refus-
ing a new trial.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Wm. M. Abbott, Wm. M. Cannon, and Kingsley Cannon,
for Appellant.

Sullivan & Sullivan, and Theo. J. Roche, for Respondents.

HENSHAW, J.—This action was prosecuted by the heirs
at law of John W. Runnels, deceased, to recover damages
from the defendant for having unlawfully occasioned his

death.   The appeal presents but a single point.   Herein the
appellant contends that the evidence established as matter of
law the contributory negligence of the deceased, and that the
court therefore erred in not instructing the jury to that effect
and directing its verdict.

The following are the facts: Defendant operates a double
track line of electric street railway along Haight Street, in
the city and county of San Francisco.   Haight Street ex-
tends easterly and westerly and is bisected by Pierce Street
and to the west of Pierce Street by Scott Street, distant
412½ feet therefrom.   The bisecting · streets cross Haight
Street at right angles.   The accident occurred on the evening
of January 4, 1912, near 6 o'clock P. M.   It was dark.   De-
ceased, who was a teamster, at the end of his day's work,
was driving a gentle team of horses attached to a heavy sand
wagon, coming from the north on Pierce Street to cross
Haight Street.   He had proceeded on his way until his horses
were upon the southerly tracks of the electric line on Haight
Street, when apparently he became aware of danger from an
approaching car of defendant.   He urged his horses forward.
They cleared the track.   The car struck the wagon and the
impact hurled Runnels from his seat to the street, which
striking he sustained injuries occasioning his death.   The
car was a heavy electric car, twenty minutes behind time,
making its last trip for the day, and being driven at a high
and unlawful rate of speed, some twenty-five or thirty miles
an hour.   As has been said, it was dark and also a "little bit
foggy."   The headlight of the car was not lit.   No gong nor
bell was sounded.   But, on the other hand, it appears that
the interior of the car was illuminated by the usual electric
lights and that the car in its progress made a loud roaring
or rumbling noise.   From his seat on the wagon as he moved
into Haight Street the deceased could have seen the car a
block away, although immediately upon entering the street
his view would have been somewhat interfered with by trees,
telephone and trolley poles, but when clear of these his range
of vision was uninterrupted.   A lady standing on the north-
erly curb of Haight Street some little distance to the west of
Pierce Street herself heard and observed the approaching car
and noticed also that it was traveling at great speed.   She
further testifies that when she first noticed the car it was be-
tween Pierce and Scott Streets, but nearer to Pierce Street

than Scott. It was traveling at such a rate of speed that she thought it not safe to cross the street afoot in advance of it and so waited for it to pass. . At the time she saw the car she also saw defendant on his wagon and at this time the horses were nearly over the northerly tracks; ''the horses' heads and probably both their feet were on the southerly track the car was traveling on. That was the position of the horses and wagon at the time I first saw the car. [It will be remembered that the car which inflicted the injury was traveling eastward on the southerly tracks.] The next I remember the car hit the wagon. I could not say how fast the car was going at the time, but it seemed to keep up the same rate of speed.''

Appellant in thus urging that under these facts the evidence demonstrates the contributory negligence of the deceased as matter of law accepts to the full the indisputable rule and doctrine of this court often declared and stated with some elaboration in *Zibbel* v. *Southern Pac. Co.*, 160 Cal. 237, [116 Pac. 513]. Its contention, however, is that the facts in evidence from the lips of plaintiffs' witnesses demonstrate beyond peradventure that the deceased did not exercise due care in placing himself in a position of danger from which he met his death. Herein it is conceded that the deceased's conduct when confronted by his imminent and deadly peril is not to be construed as in the slightest evincing this lack of care.

The bases of appellant's argument are these: that deceased could have seen the approaching car from a place of safety; that he could have heard the approaching car from a place of safety; that in thus hearing and seeing the approach of the car he should have known that it was traveling at an excessive rate of speed and was not going to stop at the intersecting street. He should have known this, it is insisted, because the lady standing on the northerly curb of Haight Street and farther away from the car than was the deceased did see and hear and realize these things and, as has been said, concluded that it was unsafe for her to essay foot travel across the street until the car had passed. To these facts appellant adds the legal argument that the duty of the driver of a vehicle in crossing a street railroad track has become standardized, and that this duty requires him to look and listen before attempting to make the crossing. Furthermore,

that the duty of the driver of a vehicle not to attempt to drive across a track when a car is known to be approaching at a dangerous rate of speed has also become standardized, and that this deceased failed to take the first precaution in looking and listening and did recklessly drive in front of a rapidly approaching car in violation of this second duty, wherefore, it is argued, that for either and for both of these reasons his contributory negligence is established as matter of law.

As to the legal propositions thus advanced it must first be said that the duty of a foot-passenger or of the driver of a vehicle in crossing the tracks of a street railroad has been standardized no further than is involved in the familiar declaration of law that in so doing he must exercise reasonable care for his own protection. The duty of stopping, looking, and listening made incumbent upon one about to cross the right of way of a steam railroad is not the rule governing the rights of foot-passengers and vehicle drivers in venturing upon, crossing, or using the tracks of a street railroad. The duty of such is no higher than or different in law from the duty of the company operating the electric car saving in the one particular so often pointed out that because the car is confined to its tracks, vehicles and foot-passengers must give way to clear its passage. (*Shea* v. *Potrero etc. Co.*, 44 Cal. 414; *Swain* v. *Fourteenth St. R. R. Co.*, 93 Cal. 184, [28 Pac. 829]; *Driscoll* v. *Market St. R. R. Co.*, 97 Cal. 566, [33 Am. St. Rep. 203, 32 Pac. 591]; *Clark* v. *Bennett*, 123 Cal. 278, [55 Pac. 908]; *Wahlgren* v. *Market St. Ry. Co.*, 132 Cal. 664, [62 Pac. 308, 64 Pac. 993]; *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 488, [66 Pac. 734]; *Hamlin* v. *Pacific Elec. Ry. Co.*, 150 Cal. 776, [89 Pac. 1109]; *Scott* v. *San Bernardino Valley Co.*, 152 Cal. 610, [93 Pac. 677]; *Lawyer* v. *Los Angeles Pacific Co.*, 161 Cal. 53, [118 Pac. 237].) Nor yet is it true that one about to cross the tracks of a street railroad is not entitled to act upon the belief that the operatives of the street railroad will upon their part obey the law and observe due care and caution. Indeed, the contrary is the rule, and it is needful to do no more than to quote briefly from *Scott* v. *San Bernardino Valley Co.*, *supra*, as follows: "The foot-passenger or driver of a horse has a right to expect that those in charge of street-cars will operate them in the manner and run them at the speed which is customary at the particular

place, and that they will give the usual warnings and signals, and take the usual precautions to avoid injury to others.'' It is true that in cases such as this, the implied, if not the expressed, attitude of the company is that foot-passengers and drivers by reckless indifference invite peril and court death. It is equally true that the corresponding attitude of the injured person or his representatives is that the defendant company permits its cars to be hurled along the public thoroughfares like swift-moving juggernauts, and that the only law of the highway which they recognize is that he may save himself who can. In individual cases one or the other is quite right. In the generality of cases the truth lies between. In the case at bar let it be assumed that the deceased did hear and see the approaching car. It was dark. The headlight was not lit. The fact that the lady standing upon the curb concluded that it was approaching at a speed too fast to warrant her attempting to pass in front of it is not conclusive as to the conduct of the deceased. He was not in law bound to believe that a car, though traveling at undue speed when he saw it half a block or more away, would continue to violate the law and not check its speed as it drew near an intersecting street. It was for the jury then to pass upon the question of the deceased's negligence and not for the trial court or this court to declare that because he put himself in a place of peril under these circumstances and met his death thereby, his contributory negligence passed beyond the domain of questioned fact and is established as a matter of law. Quite similar in this respect is *Bresee* v. *Los Angeles Traction Co.,* 149 Cal. 131, 138, [5 L. R. A. (N. S.) 1059, 85 Pac. 152, 154], and better cannot be done in finally disposing of this case than to quote at some length therefrom. The court had instructed the jury that ''It is not negligence on the part of such motorman to assume that a person will not attempt to cross the track in front of an approaching car which is so near as to render a collision probable.'' Concerning this instruction this court through Mr. Justice Shaw said: ''The probability of a collision between a moving car and a vehicle crossing in front of it depends largely upon the speed of the car; and the action of a careful person attempting to cross, in choosing the distance at which to cross in front of such car, will depend upon his knowledge, and means of knowledge, of the speed with which the car is approaching him. There

was evidence strongly indicating, if not absolutely demonstrating, that the car in question at the time of the accident was running at a speed of at least twenty-five or thirty miles an hour. This was in the night-time and upon a street in the thickly settled portion of the city. With the car going at such tremendous speed, it is not unlikely that persons about to cross the track might choose a place so near as to make collision probable, and yet, from their point of view, it might seem entirely reasonable and safe for them to cross at the place selected. Their failure to perceive the danger might be entirely due to the excessive speed of the car, and to their inability in the darkness to detect it and comprehend the shortness of the time required for the car to pass over the distance between it and the place selected for the crossing. The motorman must be assumed to know approximately the speed of his car. Under such circumstances, and while running at such excessive speed, it cannot be said, as a matter of law, that the motorman ought not reasonably to have expected that persons might attempt to cross the track at a point which would in fact be dangerously near, but which to them would not appear so. The circumstances might be such as to charge him with knowledge of this likelihood. Due care would require him in that case to anticipate such probability reasonably arising from the consequences of his own gross carelessness. The court, therefore, should not have stated as a matter of law that the motorman, under the circumstances, had a right to assume that persons would not cross dangerously near in front of him. It should have been left to the jury to say whether or not his speed was so great that he should have assumed that persons might ignorantly attempt to cross so near as to make a collision probable.''

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.