[S. F. No. 11453.   In Bank.—April 15, 1927.]

## EDWARD SMITH et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

[1] EVIDENCE — JUDICIAL NOTICE — BUSINESS DISTRICT OF CITY. — A court has the right to take judicial notice of the fact that a particular locality of a city is in the business district.

[2] ID.—EVIDENCE.—In an action for damages for personal injuries alleged to have been received through the negligence of the defendant, where the evidence showed that a certain retail business house, near which the injury was received, was located on one side of the street and a hotel and library were located on the other side, and a large number of automobiles were parked next to the curbs of said street, from this evidence, aside from the judicial notice of the nature of the locality which the court may take, it may be inferred that that portion of the street was in the business district of the city.

[3] ID.—SUFFICIENCY OF EVIDENCE.—In such an action, where the evidence shows that along the portion of the street in question the train of the defendant was being operated at dark, or at the dusk of the evening, and at a rate of speed estimated to be thirty miles per hour, without any headlight and without giving any warning of its approach either by ringing a bell or sounding a whistle, the evidence is sufficient to show negligence of the defendant in the operation of said train.

[4] ID.—NEGLIGENCE—QUESTION OF FACT.—Negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence.

[5] ID.—CONTRIBUTORY NEGLIGENCE—QUESTION OF LAW.—Contributory negligence is a matter of law only when the court is impelled to say that from the facts reasonable men can draw but one inference, and that inference pointing unerringly to the negligence of the plaintiff contributing to his injury.

[6] ID.—STREETS—RIGHT OF PEDESTRIANS AND RAILWAYS TO USE.— A pedestrian has the right to the use of the street of a city equally with an electric railway, and being between the tracks

1.   See 10 Cal. Jur. 713.
3.   See 23 Cal. Jur. 883.
4.   See 19 Cal. Jur. 726; 20 R. C. L. 166.
5.   See 19 Cal. Jur. 736.
6.   See 23 Cal. Jur. 866; 25 R. C. L. 1227.

of an electric railroad upon a public street is not negligence *per se;* the street is for the use of the public, although the car, which can be operated only on the track, has a better right to that part of the thoroughfare, to which pedestrians must yield when necessary; but the rights of a company operating street-cars are otherwise not superior to those of persons who may be walking on the street.

[7] ID. — CROSSING CITY STREETS — RIGHTS OF PEDESTRIANS. — Pedestrians have the right to use and traverse the highways at all points, being chargeable only for the exercise of a due amount of care, which in its· *quantum* is governed by the circumstances; and even in populous cities pedestrians are not restricted to the crossings in traversing streets, although they are required to exercise greater care when not using crossings.

[8] ID. — OPERATION OF ELECTRIC TRAIN — CARE — PRESUMPTIONS. — A pedestrian crossing a city street has a right to assume that those in charge of an electric train passing along the street will operate it in a reasonable and careful manner.

[9] ID.—HEADLIGHT OF TRAIN—RIGHT TO PRESUME.—A pedestrian crossing a street of a city has a right to assume that an electric train operated along the street is equipped with a proper headlight and that if said train is approaching the point where he is about to cross its track that the light from said headlight will be reflected along and upon the track where he is about to pass; and it is not unreasonable for him to assume that when he sees no headlight upon the train it is not traveling in the direction where he will cross the track.

[10] ID. — CONTRIBUTORY NEGLIGENCE — QUESTION OF FACT — DETERMINATION BY JURY.—Where contributory negligence is a question of fact, it is to be left to the determination of the jury and not to the court.

[11] ID.—RIGHTS OF PARTIES USING STREETS.—The rights and obligations of all persons using a public street are reciprocal; each may rightfully expect that the other will, at the proper time, discharge his proper duty toward the other; but he cannot rely wholly on the care of others, nor, on that account, neglect to use the precautions which the particular situation demands of him; and his care, or want of care, in such cases is generally a matter to be determined by the jury from all the circumstances surrounding him at the time.

7.  See 23 Cal. Jur. 889; 25 R. C. L. 1228.
8.  See 23 Cal. Jur. 866.
9.  See 23 Cal. Jur. 735.
10. See 19 Cal. Jur. 69.

[12] ID.—KNOWLEDGE OF CUSTOM OF TRAIN TO STOP—QUESTION OF
    FACT.—In an action for damages for injuries in being struck
    by an electric street railway, although it is shown that the plain-
    tiff knew of the practice of the railroad company to stop at
    certain points, it is still a question for the determination of the
    jury as to whether or not it was a want of ordinary care on
    the part of the plaintiff not to have kept in mind such element
    of danger while attempting to cross the street.

[13] ID. — FORGETFULNESS OF DANGER. — Forgetfulness of a known
    danger will not always operate to prevent a recovery for personal
    injuries, for to forget is not negligence unless it shows a want
    of ordinary care, and generally the question is one for the jury.

---

(1) 23 C. J., p. 87, n. 74.   (2) 33 Cyc., p. 1090, n. 49 New.   (3)
4 C. J., p. 668, n. 51 New; 33 Cyc., p. 1091, n. 54, 55.   (4) 29 Cyc.,
p. 630, n. 47.   (5) 29 Cyc., p. 630, n. 48.   (6) 28 Cyc., p. 907, n. 57;
33 Cyc., p. 922, n. 57, p. 924, n. 64; 36 Cyc., p. 1491, n. 96, p. 1492,
n. 98.   (7) 29 C. J., p. 647, n. 51; 28 Cyc., p. 914, n. 23, 24; 33 Cyc.,
p. 982, n. 84.   (8) 33 Cyc., p. 836, n. 53, p. 1027, n. 38, p. 1031,
n. 64.   (9) 33 Cyc., p. 836, n. 54, p. 1031, n. 65, p. 1126, n. 49.   (10)
29 Cyc., p. 640, n. 13.   (11) 28 Cyc., p. 913, n. 17 New, 20.   (12) 33
Cyc., p. 1127, n. 56 New.   (13) 29 Cyc., p. 519, n. 29.

APPEAL from a judgment of the Superior Court of Ala-
meda County.   James G. Quinn, Judge.   Reversed.

The facts are stated in the opinion of the court.

Philip M. Carey and Chapman, Trefethen & Chapman
for Appellants.

Ford, Johnson & Bourquin for Respondents.

CURTIS, J.—This action was brought to recover damages
sustained by plaintiff Edward Smith for injuries caused by
the alleged negligence of the defendants in the operation
of an electric car or train belonging to the defendant corpo-
ration.   The defendant Tom Kelley was the motorman in
charge of said car at the time said plaintiff was injured,
and the plaintiff, Vernon P. Peck, was the employer of the
said Edward Smith at the date of the latter's injury.
Hereafter we will refer to Edward Smith as the plaintiff or

---

13.   See 19 Cal. Jur. 587.

appellant and the Southern Pacific Company as the defendant or respondent. At the close of plaintiff's evidence the court granted a motion for a nonsuit and from the judgment, based upon the order granting said motion, the plaintiffs have appealed. The injury of plaintiff, for which he seeks to recover damages in this action, was received while he was crossing Shattuck Avenue in the city of Berkeley on the evening of October 20, 1922, at about half-past 6 o'clock. The plaintiff was twenty-six years of age, in good health, and his hearing and eyesight were unimpaired. He was employed at the time in Pex Candy Store as a soda water dispenser, and had been so employed for a period of about two months previous thereto. During a part of this time he had lived in San Francisco and made daily trips to and from that city to Berkeley over the Key Route, getting off the train at Bancroft Way. He knew on the date of the injury that both the Key Route and the Southern Pacific trains coming from San Francisco stopped on the south side of Bancroft Way, and on the north side of Bancroft Way in going to San Francisco. He also knew that the Southern Pacific trains used the third and fourth tracks, but he did not know on just which track the northbound train stopped nor on which track the south-bound train stopped. He never rode on those cars. Shattuck Avenue runs north and south and is intersected at right angles by Bancroft Way and Kettredge Street. Shattuck Avenue is practically 160 feet in width. Bancroft Way is 61 feet in width. Pex Candy Store is located on the east side of Shattuck Avenue and 60 feet north of Bancroft Way. Kettredge Street is the next street north of Bancroft Way and runs parallel thereto. There are four car tracks running abreast on Shattuck Avenue, and commencing on the east side of said avenue these tracks are referred to in the evidence as tracks numbered 1, 2, 3, and 4. Tracks 1 and 2 are used by the Key Route, upon which it operates its local and interurban cars from the San Francisco pier to the city of Berkeley, and tracks 3 and 4 by the Southern Pacific Company for like purposes. The distance between the rails of each of these tracks is 4 feet 8½ inches. The sidewalk on the east side of Shattuck Avenue is 14 feet in width and the distance from this sidewalk

to the east rail of track number 1 is 29 feet.   The distance
from the west rail of track 1 to the east rail of track 2
is 7½ feet, and the distance from the west rail of track 2
to the east rail of track 3 is 12 feet, and from the west
rail of track 3 to the east rail of track 4 is 12 feet and 3 inches.
From the west rail of track 4 to the sidewalk on the west
side of Shattuck Avenue is 53 feet.   The surface of Shattuck
Avenue between Bancroft Way and Kettredge Street is
oiled macadam and the rails of the respective tracks are
substantially flush with the street.   On the evening of Octo-
ber 20, 1922, at about 6:30 o'clock, the plaintiff left Pex
Candy Store for the purpose of going to his hotel, which
was located almost directly across Shattuck Avenue from
said store.   As he walked out on the sidewalk in front of
the candy store he noticed a Southern Pacific train on track
number 3.   This train had stopped for the purpose of re-
ceiving and discharging passengers just south of Bancroft
Way.   It was dusk or dark at this time and the lights in
the store and the street lights were lighted.   Plaintiff tes-
tified that he could see a man on the west side of Shattuck
Avenue in front of the door "that is, the outline of a
human," and he could see cars thickly parked on the west
side of Shattuck Avenue as far north as Kettredge Street.
He identified the train south of Bancroft Way on the third
track as a Southern Pacific train by the lights that were
in the train.   There was no headlight on this train.   From
this fact plaintiff inferred that the train was going toward
San Francisco and not toward Berkeley.   After thus ob-
serving this train the plaintiff walked to the curb of the
sidewalk and then around an automobile that was parked
alongside the curb.   As he walked around the automobile he
again saw the Southern Pacific train still standing south of
Bancroft Way on track number 3.   At that time a local
Key Route car arrived from the north from Berkeley and
stopped on the first track in front of where plaintiff arrived
as he walked around said automobile.   He walked north
along this car a distance of 15 or 20 feet and passed around
its rear end, and when on the west rail of track number 1
he again observed the Southern Pacific train, which was in
a position similar to that which it occupied when he saw it
on the two previous occasions, but he could not tell whether

it was in motion or not. It appeared to be standing still. Plaintiff then walked briskly in a northwesterly direction, and when he reached about the middle of track number 3 he was struck by said train and severely injured. His left foot was crushed by the wheels of one of the cars, as a result of which his left leg was amputated midway between the ankle and knee. He testified that as he walked in a northwesterly direction from the west rail of track 1 to the point where he was struck he looked west and south. "During that thirty feet I had no intimation at all of any kind or character that the train was going. I was walking across the track and I judge I was about the middle of the Southern Pacific track, I judge the car was that struck me. I got a glance out of the corner of my eye and I sprang into the air and backwards. The train was right on top of me then. Before I could spring backwards the front end of the train must have struck me. To the best of my recollection I think it was the front end." Plaintiff further testified that there was nothing to obstruct his view from the time he left the west rail of track 1, from which point he saw the Southern Pacific train for the third and last time south of Bancroft Way, up to the time he was struck. This point on the west rail of track 1 from which plaintiff last saw the Southern Pacific train was designated and marked upon a map or exhibit before the trial court as "S–3." Plaintiff testified that after he left this point S–3 he did not turn and look to his left to observe whether or not the Southern Pacific train which he had seen standing was approaching, and that during that time if he had so turned and looked he could have seen said train. Other witnesses testified that the train which struck plaintiff carried no headlight, and that no whistle or bell or any other warning was sounded or given by those in charge of the train after it left the point south of Bancroft Way until it struck plaintiff. The witness Dyer testified that he was standing in front of the Pex Candy Store; that he heard no bell or whistle from the train; that he heard no rumbling or other sound from the train that he noticed until the brakes were applied, and that "when I saw Smith with his leg under the train, my best judgment was that the train was traveling at the rate of speed they usually run along there. I think it is about thirty miles per hour."

There is no question, and but slight contention, if any, but that the evidence shows that the defendant was negligent in the operation of its train in the manner shown by the foregoing evidence. [1] Shattuck Avenue at the locality where plaintiff was injured was in the business district of the city of Berkeley. Of this fact the court has a right to take judicial notice (*Varcoe* v. *Lee,* 180 Cal. 338 [181 Pac. 223]; *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125]). [2] Furthermore, the evidence shows that Pex Candy Store, a retail business house, was located on one side of said street and a hotel and library were located on the other side, and a large number of automobiles were parked next to the curbs of said street, and from this evidence, aside from the judicial notice of the nature of the locality, which the court may take, we may infer that that portion of Shattuck Avenue to which this controversy relates was in the business district of said city. [3] Along this portion of Shattuck Avenue the evidence shows the train of defendant was being operated at dark, or at the dusk of the evening, and at the rate of speed estimated to be 30 miles per hour without any headlight and without giving any warning of its approach either by ringing a bell or sounding a whistle. We are satisfied that proof of these uncontradicted facts is sufficient to show negligence on the part of the defendant in the operation of said train.

The record shows, however, that the ground upon which the motion for nonsuit was granted was not that plaintiff had failed to show negligence on defendant's part in the operation of said train, but that the evidence on behalf of plaintiff showed as a matter of law that plaintiff was guilty of contributory negligence in failing to observe the train before stepping upon the track in front of it while in the act of crossing Shattuck Avenue. The sole question, therefore, presented on this appeal is whether the plaintiff was as a matter of law guilty of contributory negligence.

[4] "Negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence." (*Walgren* v. *Market Street Ry. Co.,* 132 Cal. 656, 663 [62 Pac. 308, 309, 64 Pac. 993]; *Jansson* v. *National Steamship Co.,* 189 Cal. 187, 192 [208 Pac. 90].)

[5] ''Contributory negligence is a matter of law only when the court is impelled to say that from the facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.'' (*Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 336 [208 Pac. 125].) In the light of the rule of law as expressed above, let us examine the acts of the plaintiff as revealed by the evidence just prior to and at the time he met his injury. After leaving his place of business for the purpose of going to his hotel, he looked across Shattuck Avenue on three different occasions. First, when he was on the sidewalk in front of Pex's Candy Store, then when he had passed around the automobile parked in front of the store, and again from the rear of the Key Route street-car on track 1, which had just arrived from Berkeley. On each of these occasions he saw the Southern Pacific train on the third track, south of Bancroft Way. On the first two of these occasions when he saw it the train was standing. On the third occasion he testified he could not say whether it was moving or not, but it appeared to be standing still. The train was then approximately 175 feet south of the point on the track where the plaintiff would cross it on his way to his hotel. The plaintiff was from 25 to 30 feet from this same point. Observing that the train facing him had no headlight, he assumed that it was traveling from him instead of in his direction. For this reason he made no further attempts to observe its movements, but walked briskly the distance of from 25 to 30 feet in a northwesterly direction and was struck by the train when he was about in the middle of the track. He heard no sound from the train of any nature before it struck him, and he did not see it until it was on top of him. While he testified that he looked to the south and west after leaving point ''S–3,'' where he last saw the train south of Bancroft Way, he, of course, did not look in the direction in which the train was during this time or he would have seen it. There was nothing to obstruct his view or to prevent his seeing the train had he looked. His testimony indicates that after leaving point ''S–3'' he considered himself safe from any danger from cars or trains passing over said avenue and was observing the automobiles as they traveled

up and down the westerly side of Shattuck Avenue over which he would pass in going to his hotel after he had left the four car tracks on said avenue. Do these facts present a question concerning which the minds of reasonable men might differ? [6] Appellant had the right to the use of the street equally with the respondent. "Being between the tracks of an electric railroad upon a public street is not negligence *per se*. The street is for the use of the public, although the car, which can be operated only on the track, has the better right to that part of the thoroughfare, to which pedestrians must yield when necessary. The rights of a company operating street cars are otherwise not superior to those of persons who may be walking on the street." (*Lawyer* v. *Los Angeles Pacific Co.*, 161 Cal. 53, 56 [118 Pac. 237]. See, also, *Runnels* v. *United Railroads*, 175 Cal. 528 [166 Pac. 18]; *Woodhead* v. *Wilkinson*, 181 Cal. 599, 603 [10 A. L. R. 291, 185 Pac. 851].) In *O'Connor* v. *United Railroads*, 168 Cal. 43 [141 Pac. 809], this court on page 48 said: "The streets of a municipality are for the use of the traveling public and the right of a street-car company is only to use it in common with the public. The fact that the company has been granted a right to lay tracks and operate cars along the streets gives it no exclusive right to travel even over that portion of a street covered by its tracks. Other vehicles have a right to travel over the entire street, including the space between the tracks. Nor is this right restricted to the times when other portions of the street may be crowded or in bad condition. Nor is a traveler in doing so in any sense of the term a trespasser. As a member of the public he is entitled as a matter of right to use the entire street subject only to the limitation that, as the use of the street by the car company is confined to its tracks, a traveler may not unnecessarily interfere with or obstruct a car in its movement thereon. The car company is entitled in the interest of the public service to a free and unobstructed passage at all times of its cars over its tracks when necessary, and when such movement is being made free vehicles must yield a clear right of way to it for that purpose. (*Shea* v. *Potrero & Bay View R. R. Co.*, 44 Cal. 414; *Clark* v. *Bennett*, 123 Cal. 275 [55 Pac. 908]; *Scott* v. *San Bernardino Valley Traction*

*Co.,* 152 Cal. 610 [93, Pac. 677]; *Lawyer* v. *Los Angeles Pacific Co.,* 161 Cal. 53 [118 Pac. 237].) Hence, within the rule of these authorities, negligence on the part of the plaintiff cannot be raised from the mere fact that he was driving in proximity to the track of the defendant because he had a clear legal right to do so subject to the limitation that we have stated.'' [7] Furthermore, appellant was within his rights in passing over Shattuck Avenue between blocks (*Raymond* v. *Hill,* 168 Cal. 473 [143 Pac. 743]). On page 482 of this opinion the court said: ''As to foot passengers, the old common-law freedom of use of the king's highway has not been modified in this state by any positive enactment. So that it still remains the law that foot passengers have the right to use and traverse the highway at all its points, being chargeable only for the exercise of a due amount of care, which due amount of care, in its *quantum,* is governed by the circumstances attending the use which the pedestrian actually makes. Thus in this state, even in populous streets of cities, pedestrians are not restricted to the crossings in traversing a street, but may cross it at any point.'' However, in crossing the street at a point other than at the regular crossing and in a diagonal route the exercise of greater degree of care was enjoined upon appellant than if he had used the established crossing. (*Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8].)

The case presented by the evidence before us is not one in which the pedestrian without any heed or care as to the dangers he might encounter in crossing a busy street walked blindly into the path of a passing train. On the other hand, the evidence of plaintiff shows that from the time he left his place of employment for the purpose of crossing Shattuck Avenue his attention was directed to the objects in the street which might interfere with his safety in crossing it. Before stepping on to the street he made observations as to cars and other vehicles. After passing behind the automobile parked in front of the candy store he again looked over Shattuck Avenue. At this time a local Key Route car stopped in front of him, and after walking around it he, for a third time, looked for any danger that might beset his traveling across the street. The only thing

he observed at this time was the defendant's train, which he thought was standing still on the third track below Bancroft Way. From the fact that no headlight was showing on the train he assumed that it was moving in an opposite direction from the place where he would cross said track. Believing that no danger was present from this train he continued his trip across the street and directed his attention to the automobiles which were passing over that part of the street which he would cross when he left the four car tracks thereon. It will thus be seen that he at least attempted to give his attention to his safety when crossing said street. [8] He had the right to assume that those in charge of the respondent's train would operate it in a reasonable and careful manner. This was held in *O'Connor* v. *United Railroads,* 168 Cal. 43, 50 [141 Pac. 809], where the court lays down the rule as follows: ''The foot passenger or driver of a horse has a right to expect that those in charge of street-cars will operate them in the manner and run them at the speed which is customary at the particular place, and that they will give the usual warnings and signals, and take the usual precautions to avoid injury to others.'' Appellant had the right to assume while crossing said street that the motorman in charge of respondent's train would sound a warning bell or whistle as he crossed Bancroft Way, a cross-street (*Lawyer* v. *Los Angeles Pacific Co., supra,* p. 56). [9] He undoubtedly had a right to assume that respondent's train was equipped with a proper headlight and that if said train was approaching the point where he was about to cross its track that the light from said headlight would be reflected along and upon the track where he was about to pass. It was not an unreasonable assumption on his part to assume, as he saw no headlight upon the train, that the train was not traveling in the direction where he would cross its track. Whether under these circumstances appellant was warranted in attempting to cross defendant's track without again looking to see whether the train was approaching is the question presented by the foregoing evidence. That this question is one of fact for the jury and not one of law for the court we have but little doubt. As bearing upon this question we refer to the language used by this court in *Mann* v. *Scott,* 180 Cal. 550,

554 [182 Pac. 281, 283] : "Whether, if she saw the auto-
mobile, respondent would have been warranted in going
toward the street-car without further watching the auto-
mobile approach, relying upon a compliance by the appel-
lants with the requirements of the ordinance, was a question
upon which men's minds might well differ, and hence it was
properly a case for the jury."

[10] If it is such a question, then whether appellant
was guilty of contributory negligence should have been left
to the determination of the jury and not to the court. In
*O'Connor* v. *United Railroads, supra,* this court used lan-
guage which we think aptly applies in the present action,
as follows: "While it is true that one cannot rely entirely
and wholly upon the care of another and neglect the pre-
cautions which in a particular situation he should exercise,
still, when he has a right to trust to the reasonable expecta-
tion that another will discharge some duty peculiar to such
situation, it is proper that such fact should be taken into
consideration by the jury in connection with such precau-
tion as the plaintiff did take, and the jury determine there-
from whether or not under the circumstances his conduct
was negligent or not." We would also call attention to the
following language from the case of *Scott* v. *San Bernar-
dino etc. Co.,* 152 Cal. 604, 611 [93 Pac. 677] : "In a
crowded street it is often necessary and not inconsistent
with reasonable prudence for a person to cross the street in
front of street-cars, in motion or at rest, at a point so near
that it would be *prima facie* an act of negligence, if at-
tempted at another place where the streets are less crowded
and the cars usually run faster. [11] The right and obli-
gations of all persons using a public street are, in this re-
spect, reciprocal. Each may rightfully expect that the
other will, at the proper time, discharge his proper duty
towards others. He cannot rely wholly on the care of others,
nor, on that account, neglect to use the precautions which
the particular situation demands of him. But he frequently
must, to some extent, depend on others in such situations,
and his conduct must be considered in view of that fact in
determining whether or not it is negligent. His care, or
want of care, in such cases is generally a matter to be deter-
mined by the jury from all the circumstances surrounding

him at the time." To the same effect is *Clark* v. *Bennett*, 123 Cal. 273, 277 [55 Pac. 908]. These authorities appear to us to be decisive of the question before us and to hold unquestionably that the case as made by plaintiff's evidence was one for the decision of the jury and was not one which should have been decided by the court.

[12] Respondent relies with some considerable assurance upon the testimony of appellant that he knew of the practice of the Southern Pacific Company to stop its north-bound trains south of Bancroft Way and its south-bound trains north of Bancroft Way. Undoubtedly appellant testified to such knowledge, but it was still a question for the determination of the jury as to whether or not it was a want of ordinary care on the part of the appellant not to have kept in mind such element of danger while attempting to cross said street (*Oles* v. *Kahn Bros.*, 81 Cal. App. 76 [253 Pac. 158]). In the recent case of *Meindersee* v. *Meyers*, 188 Cal. 499, 503 [205 Pac. 1078, 1080], which was brought by husband and wife to recover damages for injuries sustained by the wife through falling into an excavation made in the street by the employees of defendant and left in an unguarded condition, it was sought to show that the wife, who was injured during the night-time, knew of said excavations and was therefore guilty of negligence in the use of the street in proximity thereto. This court held, however: "Even assuming that their observation of the work done was more or less extensive during the day, it was for the jury to say whether it was a want of ordinary care for Mrs. Meindersee not to have the open excavation in mind when she returned home at 11 o'clock that night, for it has been repeatedly held that even with full knowledge of such danger one may be injured and yet be in the exercise of due care." Although the appellant had knowledge of the practice of the Southern Pacific Company to stop north-bound trains on the south side of Bancroft Way, still when he observed the train standing on the south side of Bancroft Way without any headlight, and concluded that it was a south-bound train, this practice of the company to stop north-bound trains south of Bancroft Way may not have occurred to him at the time. [13] This was not necessarily negligence on his part, for as it was said in *Meinder-*

see v. *Meyers, supra,* at page 504, ''forgetfulness of a known danger will not always operate to prevent such recovery, for to forget is not negligence unless it shows a want of ordinary care. Generally the question is one for the jury.'' The following cases enunciate the same rule: *Roseberry* v. *Edwards F. Niehaus & Co.,* 165 Cal. 481, 483 [137 Pac. 232]; *Jacobson* v. *Oakland Meat etc. Co.,* 161 Cal. 425, 430 [Ann. Cas. 1913B, 1194, 119 Pac. 653]; *Giraudi* v. *Electric Imp. Co.,* 107 Cal. 120, 126 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108]; *Oles* v. *Kahn Bros.,* 81 Cal. App. 76 [253 Pac. 158]; *Hayward* v. *Downer,* 65 Cal. App. 450, 451 [224 Pac. 265].

It follows from the foregoing that the trial court erred in granting defendant's motion for a nonsuit. For this reason we are of the opinion that the judgment should be reversed and it is so ordered.

Richards, J., Preston, J., Langdon, J., Shenk, J., Waste, C. J., and Seawell, J., concurred.