[Civ. No. 513. Fourth Appellate District.—December 20, 1930.]

RUTH OGBURN, Appellant, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

588

E. B. Drake and G. K. Scovel for Appellant.

Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert and H. K. Lockwood for Respondents.

BARNARD, J.—This is an action for damages for personal injuries received by the plaintiff in a collision between an automobile driven by her, and a railroad train operated by defendants. A nonsuit was granted by the trial court on the sole ground of the contributory negligence of the plaintiff, and the only question here presented is whether such negligence may be imputed to her as a matter of law, under the facts shown.

Viewing the evidence in the light most favorable to appellant, the following facts appear: The accident occurred at a point where the single track of the respondent railroad crosses Seventeenth Street in the city of Santa Ana, which point is within a mile of the railroad company's depot in said city. The appellant was driving westerly in a Ford coupe on Seventeenth Street, a paved and busy street, about 3 o'clock in the afternoon. Her car was struck by a train operated by the respondents, consisting of a steam engine and five cars, which was entering Santa Ana from the north, at a speed of about forty miles per hour, and, as testified by the engineer, the engine was not "working steam" but was "drifting". There was evidence that no bell was rung, and that no whistle was blown until the train arrived at a distance from the crossing, which one witness estimated as one and one-half times

the length of the courtroom (see sec. 486 of the Civil Code). The respondent company had installed at this crossing a warning signal commonly known as a wigwag, which, when properly working, gave warning of approaching trains by oscillating a disk back and forth and ringing a bell. The appellant, a young lady about thirty years of age, testified that her hearing and sight were good; that she had crossed this crossing frequently for five or six years; that as she approached the crossing on this occasion, she stopped for three or four seconds when about ten or twelve feet from the first rail; that she looked both ways and listened and looked at the bell (the wigwag) and did not see or hear anything; that no whistle was blown or bell rung on the train; and that she was unable to see up the track to her right because of certain trees. It appears that beginning about ten or twelve feet to the right of the point where she stopped, and extending northerly along the railroad track, was a walnut grove of large trees, heavy with fruit, the branches of which came within three or four feet of the ground and extended to within five or six feet of the first rail of the railroad track. The appellant testified that she had seen the wigwag at this crossing for about five years and that she knew how the device operated when a train was coming, that when she stopped, she looked at the wigwag and it did not move, nor did the bell ring; that she next looked both ways and then started her car forward in low gear and was proceeding at a speed of three or four miles an hour when she was hit; that as she proceeded, she first looked down the track to the south, and seeing nothing, turned and looked to the north; that when she was within three or four feet of the track and saw the train it seemed right there; and that she was scared and turned her wheel and just then the train struck her car, causing the injuries complained of. On cross-examination, appellant testified that she first looked at the wigwag when about fifty feet from the track and continued to watch it as she approached that she saw it was not going, and came to a stop; that she then looked at the wigwag, which was not moving; that she then looked to the north and south; that she could not see through the leaves of the walnut trees; that on previous trips across this crossing she always came to a complete stop whether the wigwag was going or not; that as she started

forward in low gear, she was listening for trains to blow their whistles or other noise; that the first intimation she had of the approach of the train was when the front wheels of her automobile were on the first rail of the track, at which time the train was fifty or sixty feet away; that she heard no sound from the approaching train; and that after starting up in low gear, she looked first to the south and then to the north, at which time the front wheels of her car were three or four feet from the first rail. She further testified that the windows of her automobile were open and that because the trees were so thick on this occasion, she stopped and "looked good".

Respondents argue that appellant was guilty of contributory negligence in not stopping the engine of her automobile while she was attempting to listen for sounds of an approaching train, and also in stopping at a place where, on account of the trees, she could not see more than ten or twelve feet up the track. They rely upon the general rule that the driver of an automobile before crossing a railroad track, which is in itself a warning, must stop, look and listen, even to the extent, if necessary, of getting out and walking ahead to a point where he can assure himself that no train is approaching. (*Young* v. *Pacific Elec. R. Co.*, 208 Cal. 568 [283 Pac. 61]; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651]; *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788]; *Jones* v. *Southern Pac. Co.*, 34 Cal. App. 629 [168 Pac. 586]; *Chrissinger* v. *Southern Pac. Co.*, 169 Cal. 619 [149 Pac. 175]; *Griffin* v. *San Pedro etc. Co.*, 170 Cal. 772 [L. R. A. 1916A, 842, 151 Pac. 282].) The rule has been established by such cases as these, that where "the standard of conduct is so obvious as to be applicable to all persons and the plaintiff has failed to measure up to that standard, under the circumstances shown, he is not entitled to have his case go to the jury". In *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788, 792], the court after reviewing a number of cases said: "In all cases in which judgments have been upheld, either the injured party stopped, looked and listened or took every opportunity to learn of the approach of the train that a cautious person should have taken in the circumstances of the situation." In that case, the court calls attention to the fact that under the circumstances

there existing, a traveler had an open space of approximately twenty-one feet six inches in which to make observation for an approaching train. Although the appellant, in the instant case, did stop, look and listen, and thereafter proceeded slowly, in low gear, and with considerable caution, and although her opportunity for observation up the track in the direction from which this train came was very limited on account of the proximity of the trees to the rails, it may be conceded that she failed to meet the utmost requirement of the general rule above stated, in that she did not alight and walk ahead.

We think, however, that under the circumstances this case falls within what may be called a partial modification of the strict stop, look and listen rule above referred to, and that it comes rather within the rules laid down in the guarded crossing cases. In the case of *Koch* v. *Southern California R. Co.*, 148 Cal. 677 [113 Am. St. Rep. 332, 7 Ann. Cas. 795, 4 L. R. A. (N. S.) 521, 84 Pac. 176, 177], a case involving a crossing where the railroad company maintained gates and signal bells, although it was held that the plaintiff had failed to exercise any care whatever for his own safety, the court said:

"The case thus presented is not one as to the degree or amount of care which should be exercised by one about to cross a railroad under the invitation to proceed given by the open gates, but whether under such circumstances a man may fail or decline to exercise any care whatsoever, treating the open gates as a positive assurance of safety. Of course, in any case such as this, where it is shown that a plaintiff has exercised some care, the question whether or not the care actually exercised was due and sufficient will always be a matter for determination by the jury. But where, as here, the unconflicting evidence shows that he exercised no care whatsoever, it becomes a question of law to say whether or not such a plaintiff's case shall be submitted to the jury. . . . Nor is it the law that when a railroad company adopts safety gates or any other appliance for the protection of the public the public is thereby absolved from all duty of taking care of itself. A person is still required to exercise due and ordinary care, and while the *quantum* of care which will be reasonable may be less where the gates are provided and are relied upon by the traveler, still the gates themselves are not an assurance and a warranty

such as to justify a traveler in going blindly ahead in total disregard of all ordinary precautions, as did the plaintiff in this instance. . . . ''

In *Gregg* v. *Western Pac. R. Co.*, 193 Cal. 212 [223 Pac. 553, 557], a case in which a flagman who was kept at a crossing to warn the public of approaching trains was absent from his post, it was held that the case fell within the rules controlling guarded crossings, and a judgment of nonsuit was reversed. There the injured party testified that he had checked his speed to five or six miles an hour, had listened and also looked, so far as the conditions appeared to him to require it, for trains that might be approaching. His view was somewhat obstructed and a streetcar had just crossed the railroad, its conductor having previously walked forward to make observations for approaching trains. The plaintiff had assumed from the absence of the watchman that it was safe to cross the track. The court said:

''It is true, as has often been stated, that a railroad crossing is itself a place of danger and is an effectual warning of danger which must always be heeded and the exercise of ordinary care in traveling over such place is not excused by the negligent omission of the railroad company itself to exercise reasonable care. But it is also true that a railway company will not be permitted to encourage the public to relax its vigil as to the dangers that lurk in railroad crossings by assurances that the danger has been removed or minimized by the adoption of safety devices and measures and at the same time hold a person to the same *quantum* of care as if no such safety measures had been provided.''

And further:

''If a reasonably prudent person situated as appellant was situated, and seeing what he then saw and knew, would have been justified in acting upon appearances as appellant assumed to do, or, if reasonably prudent men would disagree as to whether appellant exercised ordinary care in the premises, then the case should have gone to the jury. The invitation to cross, the failure to ring the bell or sound the whistle, as required by the provisions of section 486 of the Civil Code, are elements which must be considered with all the other facts and circumstances of the entire case.''

In *Marini* v. *Southern Pac. Co.*, 201 Cal. 392 [257 Pac. 74], the railroad company had maintained gates and signal bells at a crossing for many years. The appellant often used the crossing, and learned to depend upon the signals and gates. At the time of the accident, the towerman was telephoning and failed to lower the gate or sound the bells as the train was approaching. The appellant claimed that his view of the approaching train was obstructed, and before crossing the tracks he stopped his automobile to shift into intermediate gear and did not proceed until he had looked and listened. The court in reversing a judgment of nonsuit, and holding that under the circumstances the question of contributory negligence on the part of appellant was one for the jury, said:

"In the instant case the fact that appellant did not drive blindly and heedlessly into danger, without any care whatsoever for his safety, is made plain by his uncontradicted testimony that he stopped to shift into intermediate gear and was proceeding cautiously over the tracks when the accident occurred. In such case, as above stated, the question of whether or not the care actually exercised was due and sufficient will always be a matter for determination by the jury."

In *Vaca* v. *Southern Pac. Co.*, 91 Cal. App. 470 [267 Pac. 346, 349], which was a case where a crossing bell erected by a railroad company to warn persons of the approach of trains did not ring on the occasion in question, the court, in discussing the question of contributory negligence on the part of the plaintiff, used the following language:

"While a traveler about to cross a railroad track is generally charged with the duty of stopping and looking before crossing the tracks, in each particular case his discharge of that duty and his care or negligence is to be measured in the light of surrounding conditions and circumstances. It is true that he may not seek redress for an injury caused solely through his own carelessness, but in measuring his conduct a jury may take into consideration that the railroad company has created a condition which has caused the traveler to relax his own vigilance so that he is brought to his destruction or injury. (*Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 Pac. 677]; *Runnels* v. *United Railroads*, 175 Cal. 528 [166 Pac. 18].) It is only when the evidence is such that the court is impelled to

594

say that it is not in conflict on the facts and that from these facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his own injury, that the law steps in and forbids the plaintiff a recovery. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 240 [116 Pac. 513].)''

"In *Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 Pac. 500], the court uses this language: 'The rights and obligations of all persons using a public street are reciprocal. Each may rightfully expect that the other will, at the proper time, discharge his duty toward others. He cannot rely wholly on the care of others, nor, on that account, neglect to use the precautions which the particular situation demands of him. But he frequently must, to some extent, depend on others in such situations, and his conduct must be considered in view of that fact in determining whether or not he is negligent. His care or want of care in such cases is generally a matter to be determined by the jury from all the circumstances surrounding him at the time' (see, also, *Marini* v. *Southern Pac. Co.*, 201 Cal. 392 [257 Pac. 74]; *Clark* v. *Bennett*, 123 Cal. 275, 277 [55 Pac. 908]), and we think in the present case the question of the contributory negligence of plaintiff under the circumstances disclosed was a question for the jury.''

As was further said in *Gregg* v. *Western Pac. R. Co.*, *supra*, "the extent to which a traveler may rely upon the assurance of safety arising from the absence of a flagman from his post or duty, on the presumption that it is safe for him to cross a railroad track which he is familiar with, is generally held to be a question of fact for the jury''.

▮ Under the circumstances of this case, a lesser degree of care was reasonably to be expected from the appellant than would have been the case had the wigwag signal not been installed and used at that particular crossing. While the presence of this automatic device did not relieve her from exercising such care for her own protection as was reasonable under the circumstances, the precise measure of the care still legally required of her has not been established by law, but depended upon the circumstances there existing.

▮ Appellant took certain precautions for her own safety. Although she observed that the wigwag was not working,

she stopped, looked and listened. She not only looked several times at the wigwag, but she looked up and down the track, and continued to look and listen as she proceeded in low gear, at a speed of about three or four miles per hour. The circumstances were somewhat unusual in the limited space, before reaching the track, that permitted a clear view in the direction from which the train was coming. Taking the view of the evidence most favorable to the appellant, she saw the train when her car was three or four feet from the track, and her inability to stop then may have been due to her fright at seeing the train so close at hand. This is not only the more probable, but may have been the more excusable, since no bell was rung, no whistle was blown until the train was right upon her, and the train was "drifting" without the use of steam, which may have lessened its noise. We think there is here presented a question of fact, as to whether such precautions as were taken by appellant were reasonable under the circumstances, which should have been submitted to the jury.

■ Respondents argue that appellant was guilty of contributory negligence as a matter of law, in not stopping the motor in her car while listening for sounds of an approaching train, since she testified that she did not have a muffler on her car. We are asked to take judicial notice of the fact that an automobile without a muffler, particularly a Ford, creates an excessive amount of noise. Appellant testified that both windows of her car were open; that the car did not seem to make much noise; that she was listening for the noise of the train; and that the Ford did not bother her. The noise made by such a motor would vary, depending upon its condition and the speed at which it was running. It cannot be said as a matter of law that this fact prevented appellant from hearing the train, especially in view of the other evidence that the train was drifting, and no bell or whistle was sounded. This is but a part of a question of fact which was for the jury.

■ Respondents also earnestly insist that this case comes within the more strict general rule above referred to, and not the guarded crossing rule, it being argued that appellant testified that she did not rely upon the wigwag at this particular crossing, but always stopped, irrespective

of whether or not the wigwag was operating, and, therefore, that the effect would be the same as if the signal was not there. In support of this, respondents rely upon the following testimony given by appellant:

"Q. Your testimony now is that in all the five years previous that you have crossed that crossing that you always come to a complete stop? A. Yes, sir. Q. Whether the wigwag was going or not? A. Yes, sir. Q. But on the previous occasions you hadn't hesitated as long as on this occasion? A. Some of them possibly not that long and others longer. The trees were so thick this time I stopped and looked good. Q. Were the trees any thicker than they were the week before when you had gone through there? A. No, possibly not. Q. Did you stop any longer the week before? A. Not any longer. Q. Had you ever come to that crossing when the wigwag was working? A. Yes, sir. Q. But when the wigwag wasn't operating you stopped just the same? A. Yes, sir. Q. And you don't rely on the wigwag to warn you of the approaching train, but you would rather trust your senses in that connection? A. Yes, sir."

The last question comes very near to being a catch question. If appellant had relied on the wigwag, under the decisions above quoted, she would have been guilty of contributory negligence. It will be noted that in this testimony, which occurred on cross-examination, she was being interrogated upon her custom over the preceding five years. The last question and answer, particularly relied upon by respondents in this connection, referred to this custom and the witness did not say that she did not rely at all upon the wigwag on this particular occasion. Not only is it a fair construction of her testimony that it was not her custom to rely entirely upon the wigwag, a thing she should not have done, but in other portions of her testimony it affirmatively appears that on this occasion she did rely upon it in part. She testified that she looked at the wigwag before she stopped and continued to watch it as she approached the tracks, and that when she stopped she looked first at the wigwag and observed it was not moving. With the inferences that may legitimately be drawn from her testimony, we think it may not be held, as a matter of law, that she placed no reliance at all upon the warning de-

vice, and that it may not be conclusively presumed that the effect was the same as if the signal had never been there.

We are of the opinion that the facts of this case present a question which should have been submitted to the jury. The judgment appealed from is reversed.

Marks, Acting P. J., and Warmer, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 14, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 16, 1931.