JAMES McCALDIN, Respondent, *v.* WILLIAM A. PARKE et al., Appellants.

Wharfingers do not guarantee the safety of vessels coming to their wharves. They are bound simply to use ordinary care to make the places in front of their wharves reasonably safe for vessels to approach and lie there.

Defendants owned a wharf in the East river. Plaintiff's vessel, which had been chartered by defendants, while approaching the wharf to deliver a cargo consigned to them, struck a rock in the bottom of the river about seventy feet from the wharf and was injured. In an action to recover damages it appeared that all the approaches to the wharf were safe, but the one over the rock, and hundreds of vessels had gone to the wharf in safety, in all stages of the tide. A surveyor who had examined and located the rock testified, in substance, that in his judgment it was not part of the bottom of the river, but had fallen in there. It also appeared that previous to the accident it had not been heard of and no similar accident had previously happened. Defendants had caused the basin in front of their wharf to be dredged out, and it did not appear that the rock was in the ordinary approach to the wharf, or that defendants had any control of the part of the river where it was, or had any right to remove it. *Held,* that the testimony failed to make out a cause of action.

Plaintiff claimed that defendants had contracted to give him for the approach of his vessel to the wharf sixteen feet of water. Nothing to that effect was contained in the charter party, and the only evidence was plaintiff's testimony to the effect that when negotiating for the charter party one of the defendants said that they were making arrangements to have their dock dredged out, and would give him sixteen feet of water at all stages of the tide. *Held,* that the evidence failed to show a contract as to the depth of the water; but that what was said was a mere representation, and if made in good faith defendants could be charged only for negligence.

Also *held,* that conceding the evidence established a contract, no breach thereof was shown.

Reported below, 69 Hun, 614.

(Argued May 4, 1894; decided June 5, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 8, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries to a steamship owned by plaintiff, sustained in a collision with a rock under water while approaching defendants' wharf.

The facts, so far as material, are stated in the opinion.

*Edward M. Shepard* for appellant. The accident did not occur in an approach to the berth. It should have been so ruled by the trial judge. It was error to leave it for the jury to determine. (*The Calliope*, L. R. [14 P. D.] 140.) The accident resulted from the fact that the steamer was brought in at the wrong stage of the tide. Even with that tide she could have been brought in safely if not negligently navigated — if she had been loaded less heavily or had approached in a different direction. (L. R. [1 App. Cas.] 11.) Plaintiff failed to show any negligence on the part of the defendant. (*Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Lafflin* v. *B. R. R. Co.*, 106 id. 136; *Dougan* v. *Champlain Co.*, 56 id. 1, 6–8; *Loftus* v. *U. F. Co.*, 84 id. 455.) It was error to charge "that if the jury believed that the defendants contracted, as Mr. Holmes said, for sixteen, or even fifteen feet of water, the master in navigating had a right to rely upon the fact that at half tide there would be eighteen feet of water." (*Vrooman* v. *Rogers*, 132 N. Y. 167.) The plaintiff was not free from contributory negligence. (*Vrooman* v. *Rogers*, 132 N. Y. 171.)

*William W. Goodrich* for respondent. The place where the steamer struck constitutes a portion of the "approaches" to the defendants' wharf, and this was a question for the jury. (*McCaldin* v. *Parke*, 66 Hun, 323; 69 id. 614.) The owner or lessee of a wharf is bound to keep the approaches thereto in a safe and proper condition. (*Leary* v. *Woodruff*, 4 Hun, 99; *Sweeney* v. *O. C. R. R. Co.*, 10 Allen, 374; *Carleton* v.

*F. I. & S. Co.*, 99 Mass. 217; *O'Rourke* v. *Peck*, 24 Blatchf. 474; *Nelson* v. *P. C. Works*, 7 Ben. 39; *P. R. Co.* v. *Altha*, 22 Fed. Rep. 920, 924; *Sawyer* v. *Oakman*, 7 Blatchf. C. C. 293; *Leonard* v. *Decker*, 22 Fed. Rep. 741.) The defendants were guilty of negligence in failing to know the condition of the approaches to their dock. (Shear. on Neg. 658; *Docks* v. *Gibbs*, 11 H. L. Cas. 512.)

EARL, J. The defendants owned a wharf at Hunter's Point in the East river, near New York, in April, 1887, and the plaintiff's vessel struck a rock in the bottom of the river, about seventy feet from the wharf, while approaching the wharf with a cargo of lumber consigned to the defendants, and she sustained damage for which this action was brought. Upon the first trial of the action there was judgment of non-suit, which upon appeal was reversed. (66 Hun, 323.) Upon the second trial the plaintiff recovered judgment, which has been affirmed, and which is now brought under review.

The defendants chartered the plaintiff's vessel in November, 1886, to carry lumber from Charleston to their wharf. The vessel was to be under the control and management of the plaintiff's captain and crew, and his compensation was to be the price named for every thousand feet of lumber transported.

The plaintiff claimed to recover both on the ground that the defendants were negligent in allowing the rock to be in the approach to their wharf, and also that they had contracted to give him for the approach of his vessel to their wharf sixteen feet of water at all times of the tide; and the trial judge submitted the case to the jury upon both grounds, charging them that if they found either in favor of the plaintiff he was entitled to recover. Hence, unless the evidence was sufficient to sustain a recovery upon both grounds, the judgment must be reversed, as we cannot say upon which ground the verdict was based.

1. We do not think there was sufficient evidence to show that there was a contract on the part of the defendant to furnish the sixteen feet of water as claimed by the plaintiff.

He, as a witness for himself, testified : " When we were nego-
tiating the charter, Parke asked me what the length of the
vessel was ; what she drew loaded.   I told him that the vessel
was 190 feet, and that she would draw between fifteen and
sixteen feet.   He said he wanted to know because he was
about to make arrangements to have his dock dredged out.
He said he would give me sixteen feet to go to the dock at all
times of the tide."   He admitted that he did not testify to
this upon the first trial.   Holmes, the broker who negotiated
the charter party, testified that " they said we were going to
have sixteen feet of water.   The vessel could come in at any
time and all stages of water.   That was said by the firm in
general conversation ; I could not say what individual ; it was
principally Mr. Parke, part of the negotiation being with him
and part with Mr. McClave."   This evidence of the plaintiff
and Holmes was contradicted by Parke and McClave.   We
think this evidence utterly fails to show a contract as to the
depth of water.   The contract which the parties were then
negotiating was embraced in the charter party, and nothing is
there found about the depth of water in front of the wharf.
All the language used and the circumstances of the case for-
bid the inference that the defendants meant to bind them-
selves and guarantee that there should be sixteen feet of
water at all stages of the tide.   They were not asked by the
plaintiff to give such a guaranty, and what they said were
mere statements and representations, plainly not understood
to constitute an agreement outside of the charter party.   The
parties were not engaged in making two contracts, but one
which was contained in the charter party.   The statements
had reference to the dredging which the defendants expected
to make.   In *Vroman* v. *Rogers* (132 N. Y. 167) the action
was to recover damages for alleged injury to the plaintiff's barge
and its cargo while at the wharf of the defendant in the city
of New York, and it was founded on the charge that the plain-
tiff leased wharfage there of the defendant upon the representa-
tion of the latter that the place so let was safe and that it had six
feet of water at low tide.   There was some evidence tending

to show that substantially such representations were made, and there, as here, it was claimed that the language used constituted a contract.    The learned judge writing the opinion in this court said : " There was in terms no undertaking to indemnify or protect the plaintiff against loss by reason of any condition at the wharf or in the bed beneath the water there. The defendant was not asked to do that.    What was said by him on the subject was in its nature of representation, and if made in good faith, he could be charged with liability as for negligence only."    The language used there by the wharfinger was just as significant of a contract obligation as that we have here.    The plaintiff could rely upon the statements testified to by him to exonerate himself from the charge of negligence, but not to impose a contract obligation upon the defendants. But, if we assume that the alleged statements contained a contract, what was the contract ?    The defendants' wharf was three hundred feet long, and it was possible to approach it in front from all directions.    Is it a fair construction of the language used, assuming that it made a contract, that the plaintiff should have sixteen feet of water for any approach he might make to the wharf ?    There were plenty of safe approaches to the wharf.    In fact all the approaches were safe but the one over the rock, and hundreds of vessels had gone to the wharf in all stages of the tide during several years in safety.    Indeed, the plaintiff cannot have the benefit of the statement as a contract unless we hold that he was entitled for his vessel to sixteen feet of water in all directions in front of the wharf out into the river so far as any jury might find that the approaches to the wharf extended, and we cannot so hold.

2. But whatever may be said of the contract ground of liability, we are very sure that the defendants cannot, upon the evidence contained in this record, be held liable upon the ground of negligence.    As wharfingers they did not guarantee the safety of vessels coming to their wharf.    They were bound only to use ordinary care to make the place in front of their wharf reasonably safe for vessels to approach and lie there.

(*Vroman* v. *Rogers, supra; Smith* v. *Havemeyer,* 36 Fed. Rep. 927; *Carleton* v. *Franconia I. & S. Co.,* 99 Mass. 217; *Docks* v. *Gibbs,* 11 H. L. Cases, 712; *The Moorcock,* 14 Prob. Div. Law Rep. 64; *The Calliope,* Id. 138; *S. C.,* House of Lords, App. Cases, L. R., vol. 1, 1891, p. 11.)

A surveyor called as a witness by the plaintiff, who had examined and located the rock upon which the vessel struck, testified as follows: " The rocks which I have mentioned here are not I should judge part of the bottom of the East river; I should judge not from feeling of them; I should judge that they were something that fell in there; they don't seem very large; they were rather loose. When I speak of stone and also of rocks I do not mean the same thing; I indicate that some are smaller and some larger; the rocks are large. That is all I mean by that. I could not say how they came there. I could not tell you the size of them. They seemed to be a surface of three feet or more. I could measure over them and feel it go down; they do not move. I did not feel them tilt or move under the weight of my rod." From this description there is no certainty that the rocks had been there for any considerable length of time. They may have come there so recently that the defendants could not have discovered them by any degree of diligence. They covered but a very small space under a large expanse of water. Previous to the collision of the plaintiff's vessel with them they had never been heard of. They were, as we must assume, upon none of the charts of the river. The defendants had owned and used their wharf for twelve years, and during all that time neither they nor the men in their employ had heard of them. During those years from five hundred to one thousand vessels, many of them as large as plaintiff's vessel, and some larger, had gone in safety to that wharf, as we must assume, in all kinds of weather and at all stages of the tide. And the plaintiff's vessel had gone to the wharf twice before. The defendants had had the place in front of their wharf dredged out immediately after their contract with the plaintiff. Under such circumstances what reason had they to suppose that the approaches

to their wharf were not safe? What greater assurance of their safety could they have than that they had always been found adequate for all the vessels that came there during a series of years? They had employed a dredging company to dredge out the basin in front of their wharf. What more should they have done having no notice whatever of the presence of the rocks there? The case of the *Calliope* is quite in point, and so are the following authorities: *Hubbell* v. *City of Yonkers* (104 N. Y. 434); *Lafflin* v. *Buffalo R. R. Co.* (106 id. 136).

There is a singular lack of proof that these rocks were in the approach to defendants' wharf. They were not in any channel which had to be used to approach the wharf. They were in the East river, and for aught that appears may have been in that part of the river used for general navigation. It does not clearly appear that the defendants had any control of the place where they were, or that they had any right to remove them. If they were in the pathway of general navigation, and not in a place necessary for approach to the defendants' wharf, then the plaintiff took the risk of navigation there as other vessel owners did, and for that, too, the case of the *Calliope* is an authority.

Our conclusion is that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except Bartlett, J., dissenting.

Judgment reversed.