[Civ. No. 6184. First Appellate District, Division One.—May 2, 1928.]

PAT F. VACA, as Administrator, etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

C. P. Kaetzel and Henley C. Booth for Appellant.

John R. Stowe, H. J. Dubin and A. H. Brazil for Respondent.

CAMPBELL, J., *pro tem.*—On October 23, 1924, plaintiff's intestate, while crossing the track of appellant corporation where it crosses Palm Street, a public street in the city of San Luis Obispo, in a Ford truck, was struck at a grade crossing by a south-bound passenger train of the Southern Pacific Company and received injuries from which he died. This action is prosecuted by the administrator of the estate of the deceased to recover damages on account of his death. The action was dismissed as to the defendant Southern Pacific Railroad Company, and the jury before which the action was tried returned a verdict in favor of plaintiff and against the defendant Southern Pacific Company in the sum of twenty thousand dollars.

The case was tried on the theory that an automatic bell maintained at the Palm Street crossing to give warning of the approach of trains failed to ring on the occasion of the approach of the train which collided with the Ford truck driven by Vidal Garcia, deceased, and that this failure was

due to a lack of proper care on the part of the railroad company in the maintaining of the automatic bell. The answer denies the alleged negligence and as a further defense charges contributory negligence on the part of plaintiff's decedent.

Appellant urges the following points on appeal: First, on the issue of ordinary care in keeping the bell in condition the jury, though properly instructed, found directly against the uncontradicted evidence on this issue; second, that the verdict of the jury was not supported by the evidence in that the uncontradicted testimony demonstrates that as a matter of law the decedent was guilty of contributory negligence, even though there was a failure of the crossing bell; third, that the verdict of the jury was not supported by the evidence in that there was no evidence that the crossing bell failed to ring; fourth, that the court erred in its instructions to the jury.''

The facts are undisputed that the accident occurred in the afternoon of a clear day; that there was a sign, six or seven feet high, with a circular disc two feet in diameter with ''Crossing'' on it approximately three hundred feet from where the accident occurred in the direction from which deceased approached and two crossing signs directly at the crossing, and that the decedent was familiar with the crossing, he having crossed the railroad track at that point on numerous occasions. There is, however, a conflict in the evidence as to the distance up the track one approaching could see from a given point. Thomas J. Foley, trainmaster for defendant, testified that on the side of the track from which deceased approached he could at a point sixteen feet from the nearest rail look up the track for a distance of about one thousand feet, and at nine or ten feet from the nearest rail could see the track for about half a mile, while the witness Maggetti testified that ''before the dirt was taken away (which was subsequent to the accident) you couldn't see up that track without being right on it''; and according to the witness William Mallagh ''it is a straight piece of track. You couldn't see up there until you got almost on the track.''

A photograph of the scene of the accident taken shortly thereafter was introduced in evidence (plaintiff's exhibit No. 2), which gives a view up the track in the

direction from which the train approached. This photograph shows the track and the embankments on either side. From the photograph it appears that at the base or on a level with the rails on either side of the track there is a space of about three feet between the rails and the banks of the cut; that this space widens at an angle of approximately forty-five degrees from the base to the top. Appellant argues—and with some merit—that the photograph shows that decedent's view of the track was not obstructed, but, on the contrary, that on approaching the crossing, if he had looked in the direction from which the train was approaching, he would have seen the oncoming train. The value, however, of a photograph as evidence is not for this court to determine, for, as was said in *People* v. *Crandall,* 125 Cal. 129, 133 [57 Pac. 785, 787]: "We may assume that everyone now understands the limitations upon the use of the photograph. It presents but one point of view, and may sometimes make an unfair representation of the points at issue. Like any other diagram, its value must be determined by the jury from all the evidence." The jury saw the photograph and examined it in view of the surroundings at the scene of the accident, which was also inspected by it. During the trial, by stipulation of counsel, the court and jury were conducted to the scene of the accident and there viewed the crossing and surroundings and such objects as respective counsel requested be inspected. It is true that subsequent to the accident and before the inspection by the jury a portion of the bank was removed; this, however, gave the jury even a clearer view of the track running through the cut than the deceased could have had. Furthermore, the jury saw and heard a train operated through the cut and over the crossing. This evidence presents a conflict on the question of the ability of the deceased to see the approaching train before he reached the track, and, therefore, under the well-established rule the finding on this issue in favor of respondent will not be disturbed.

On the question as to whether or not the signal bell sounded and as to defendant's failure to use ordinary care in keeping the bell in condition, it may be said that several witnesses testified that they did not hear the bell ring, although they listened for it, and Kenneth Smith testified: "At the time I was looking out the window listen-

ing for a bell, which I always do, you know, habits of looking and listening for the train. At the time I heard no bell, about 2 o'clock looking for a train. I heard an engine coming and I turned to go to my work when I heard a crash." Ira Barlow testified: "Q. Now, prior to the time that the train struck the truck, while the train was approaching the crossing, did you hear the automatic bell at the Palm street crossing ring? A. I did not. Q. Do you know whether or not that bell rang? A. That bell did not ring until after that train started back as I stood on the concrete block up at the foot of it. Q. And you are sure of that? A. I am positive." This is sufficient to sustain the verdict as to this issue. "In this connection it may be said that negative testimony of witnesses who are in a position to hear and observe, who declare they heard no signals and saw none, as opposed to positive testimony that signals were given, presents a question to be submitted to the jury and it has been held such negative evidence may be sufficient to sustain a verdict" (*Jones* v. *Southern Pacific Co.*, 74 Cal. App. 10 [239 Pac. 429]; *Thompson* v. *Los Angeles, etc. Ry. Co.*, 165 Cal. 748 [134 Pac. 709]).

We concede the law to be as urged by appellant that a person approaching a railroad track which is itself a warning of danger must take advantage of every reasonable opportunity to look and listen, and that a traveler may not depend upon a custom or even a duty enjoined by law to give appropriate signals of the approach of trains, and has no right because he heard no such signals not to look and listen (*Griffin* v. *San Pedro, L. A. & S. L. R. R. Co.*, 170 Cal. 776 [L. R. A. 1916A, 842, 151 Pac. 282]), and that where the exercise of prudence would require him, if necessary, to ascertain whether his life was in danger to get out of his machine and go forward a few steps on foot in order that the matter be placed beyond peradventure (*Thompson* v. *Southern Pacific Co.*, 31 Cal. App. 567 [161 Pac. 21]; *Murray* v. *Southern Pacific Co.*, 177 Cal. 1 [169 Pac. 675]). Nor are we at variance with the rule laid down by the United States supreme court in the recent case, *Baltimore & Ohio R. Co.* v. *Goodman*, 275 U. S. 66 [72 L. Ed. 167, 48 Sup. Ct. Rep. 24], as that case establishes the same rule announced in *Thompson* v. *Southern Pacific Co., supra,* but in none of those cases did the element of crossing signals enter

into the consideration of the cases. Here the appellant had erected a crossing bell to warn persons about to cross the railroad track of the approach of trains, which crossing bell we must conclude, under the finding of the jury on the conflict in the evidence, did not ring on the occasion in question, and that being so, was the deceased under the circumstances disclosed by the record guilty of contributory negligence as a matter of law in attempting to cross the track?

■ Contributory negligence is an affirmative defense, and the burden of establishing such negligence was upon the defendant who asserted it. The record is entirely silent as to the actions of the deceased before he drove upon the track and was observed by the engineer. In *Gay* v. *Winter*, 34 Cal. 153, the court says: "In the absence of direct proof we are of the opinion that the jury are at liberty to infer ordinary care and diligence on the part of plaintiff from all the circumstances of the case—his character and habits and the natural instinct of self-preservation. To hold otherwise would be in effect to presume negligence on the part of one in excuse of negligence on the part of another. Furthermore, the same degree of care is not required of a traveler approaching a railroad crossing at which a bell or signal is erected to warn him of danger." And in *Gregg* v. *Western Pacific Co.*, 193 Cal. 212, 222 [223 Pac. 553, 557], the court uses this language: "It is true, as has often been stated, that a railroad crossing is itself a place of danger which must always be heeded, and the exercise of ordinary care in traveling over such a place is not excused by the negligent omission of the railroad company itself to exercise reasonable care. But it is also true that a railroad company will not be permitted to encourage the public to relax its vigil as to the dangers that lurk in railroad crossings by assurances that the danger has been removed or minimized by the adoption of safety devices and measures and at the same time hold a person to the same *quantum* of care as if no such measure had been provided."

■ While a traveler about to cross a railroad track is generally charged with the duty of stopping and looking before crossing the tracks, in each particular case his discharge of that duty and his care or negligence is to be measured in the light of surrounding conditions and circumstances. It is true that he may not seek redress for an

injury caused solely through his own carelessness, but in measuring his conduct a jury may take into consideration that the railroad company has created a condition which has caused the traveler to relax his own vigilance so that he is brought to his destruction or injury (*Scott* v. *San Bernardino Valley Co.*, 152 Cal. 610 [93 Pac. 677]; *Runnels* v. *United Railroads*, 175 Cal. 528 [166 Pac. 18]). It is only when the evidence is such that the court is impelled to say that it is not in conflict on the facts and that from these facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his own injury, that the law steps in and forbids the plaintiff a recovery (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, 240 [116 Pac. 513]).

In *Smith* v. *Southern Pacific Co.*, 201 Cal. 57 [255 Pac. 500], the court uses this language: "The rights and obligations of all persons using a public street are reciprocal. Each may rightfully expect that the other will, at the proper time, discharge his duty toward others. He cannot rely wholly on the care of others, nor, on that account, neglect to use the precautions which the particular situation demands of him. But he frequently must, to some extent, depend on others in such situations, and his conduct must be considered in view of that fact in determining whether or not he is negligent. His care or want of care in such cases is generally a matter to be determined by the jury from all the circumstances surrounding him at the time" (see, also, *Marini* v. *Southern Pacific Co.*, 201 Cal. 392 [257 Pac. 74]; *Clark* v. *Bennett*, 123 Cal. 275, 277 [55 Pac. 908]), and we think in the present case the question of the contributory negligence of plaintiff under the circumstances disclosed was a question for the jury.

The most serious question is the one presented by appellant's assignment that "on the issue of ordinary care in keeping the bell in condition the jury though properly instructed found directly against the uncontradicted evidence on this issue."

The complaint counts solely on the failure of the automatic bell to give warning of the approaching train: "That said defendants, with reasonable care and diligence, could have kept said automatic bell in good working order and prevented the same from being out of order, on said 23d

day of October, 1924, and at all times." It is true the answer alleges: "The train of defendants mentioned in said complaint warned said Vidal Garcia of its approach to said railroad crossing by the rumble and roar of said train, the whistle of its engine, ringing of its bell and the ringing of said automatic bell," and testimony was introduced as to whether or not the engine bell was rung. This testimony was proper, not on the question as to defendants' want of care in keeping the crossing bell in good working order and condition, but was relevant on the question of the contributory negligence of plaintiff's decedent. The momentary failure of the crossing bell was not of itself negligence. The jury was so instructed and the correctness of that instruction is not challenged, nor could it be. In *Neale* v. *Atchison etc. Ry. Co.*, 178 Cal. 225, 229 [172 Pac. 1105, 1106], the court says: "This court has never said that evidence of the failure of machinery to do its allotted work may not be introduced, but the rule is that proof of the occurrence of the accident by reason of such failure, standing alone, is not proof of negligence." If, therefore, plaintiff had proven that the accident occurred and that the crossing bell failed to ring and there rested, his case must have failed. But, says respondent, we have, as evidence from which the jury might infer negligence, the frequent inspections of the crossing bell which, if not careless, should have disclosed any defect which made the bell uncertain in its operation; the evidence of prior occasions on which the bell failed, and the fact of its failure to operate at the time of the accident, which could be considered with all the other facts and circumstances in evidence on the question of defendant's negligence.

The only evidence directed to the issue of defendants' want of care in maintaining and keeping the bell in repair, aside from the failure of the bell to ring on the occasion in question, is the testimony of three witnesses that at undefined times the crossing bell did not ring as trains approached the crossing.

Plaintiff's witness Maggetti testified that he remembered "once a long time ago" the bell did not ring when a train was approaching. The witness Herrera, called by plaintiff, testified that during "a good many years" there were occasions when the bell did not ring—"there has been no

telling, maybe a dozen times and maybe twenty times, I don't know''; and plaintiff's witness Miss Shurrager testified as to times, not specified, during an eight years' residence near the crossing when she did not hear the bell ring as a train approached. This testimony falls short of a showing that the failure of the bell to ring on the day in question was due to the want of ordinary care on the part of defendant in keeping the automatic bell in working order and does not support the allegation of the complaint charging negligence with respect to the maintenance of the bell nor justify the jury in finding that defendant failed to use ordinary care in inspection, renewal, or replacement. The evidence is without dispute that the bell did ring on the approach of a freight train earlier in the day of the accident, and also that it rang when the train which struck the decedent's automobile backed up to the crossing after the accident.

Added to this, the witness Charles C. Anthony, consulting engineer of the National Safety Appliance Company of San Francisco and an expert on signal bells, testified that he was familiar with the circuits and operation of the particular crossing; that in his opinion these circuits are in accordance with good practice and in design to insure correct operation of the bell. Frank Philbrick, assistant signal supervisor of the defendant company, explained how the bell works and testified that he inspected the bell in September, 1924, and found it in perfect condition; that about the latter part of March, 1924, or the first of April, they renewed the entire mechanism of this bell by putting in a new one; that one part of the mechanism, which is the circuit-breaker, lasts about four years, due to the burning of the contacts, the remainder indefinitely. Thomas F. White, the signal maintainer of the defendant company, testified that he inspected the bell every day he worked— that is, six days a week, and had done so for eight years; that he inspected it at 2 P. M. of the day previous to the accident; that it was then in good working order and that there was no corrosion in the circuit-breaker; that he inspected it about twenty-five or thirty minutes after the accident and found the bell was working fine, all its parts and mechanism were in good order and its condition fine. There was neither, on the day before the accident when he

inspected it nor some time after 2 o'clock on the day of the accident when he saw it, anything wrong with the bell in any way. Thomas J. Foley, defendant's trainmaster, called by plaintiff, testified that the bell was in operation at 4 P. M. the day of the accident; that he had never received "any report that that signal was not operating," and that he had never heard of that signal failing to operate.

There is no charge made in the complaint that the statutory signals by bell and whistle prescribed by section 486 of the Civil Code were not given, nor is it made to appear in the complaint or by the evidence that the signal bell was installed by virtue of any law, ordinance, or regulation of the Railroad Commission.

■ Our attention has not been called to any California decision on the subject of the *quantum* of care required of a railroad company which voluntarily installs an automatic bell at a crossing, nor have we found any such case. In *Kingsbury* v. *Boston & Maine R. R.*, 79 N. H. 203 [106 Atl. 642], in which case the facts are analogous and the principle of law involved the same as in the present case, the court says: "The burden is upon the plaintiff under the second count to show by a preponderance of the evidence that the warning bell did not ring when the southbound train passed the crossing, and that its failure to ring was due to the negligence of the defendant. If it is assumed, in accordance with the testimony of the plaintiff and his brother, that it did not ring, there is no evidence that its failure in this respect was due to the defendant's negligence. It appears from the plaintiff's testimony that it did ring a short time before upon the approach of the northbound train. All that time the system was in good working order, and the defendant was not notified that it was defective in any respect. Nor does it appear that it had failed to properly inspect the apparatus, or that in the exercise of ordinary care it could have done anything more than it did to ensure the ringing of the bell when trains were approaching. . . . What happened to the mechanism of the system that caused the bell circuit to open and give no danger signal when the collision occurred, and to be closed immediately afterwards and to give the signal cannot be said to be due to any cause for which the defendant is responsible. The mere fact that the bell did not

ring, if it is a fact, does not authorize the inference that its failure to do so was due to the defendant's negligence since it is apparent that it may have been due to some cause for which the defendant was not responsible. (*Boucher* v. *Boston & M. R. R.*, 76 N. H. 91 [Ann. Cas. 1912B, 847, 34 L. R. A. (N. S.) 728, 79 Atl. 993] ; *Bowditch* v. *Jackson*, 76 N. H. 351 [Ann. Cas. 1913A, 366, L. R. A. 1917A, 1174, 82 Atl. 1014].) The question of the defendant's negligence upon this count was improperly submitted to the jury for want of evidence.''

In *Louisville & Nashville R. Co.* v. *Adams' Administrator*, 205 Ky. 203 [265 S. W. 623], which was a crossing case in which it was claimed that the electric bell failed to operate at the time of the accident, the court instructed the jury that it was the defendant's duty ''to cause the electric bell to sound so as to give timely warning of the approach of the train.'' There it is held that the duty does not go that far, but merely to the extent that the company ''should use ordinary care to see that it was kept and maintained in working order and that it would be liable for its neglect so to do.''

◼ Here, as in *Kingsbury* v. *Boston & Maine R. R.*, *supra*, defendant had no notice, actual or constructive, of the failure of the bell to ring, nor does it appear that the railroad company failed to properly inspect the signal bell, or that in the exercise of ordinary care it was called upon to do anything more than it did to insure the ringing of the bell on the approach of trains. The plaintiff, on whom rests the burden of proving negligence, furnished no standard of care for acceptance by the jury; the jury, therefore, could not shut its ears to the only testimony on the question and set up a standard of its own. The case is not one involving the principle of *res ipsa loquitur* or of the violation of a statutory rule that the bell must ring on all occasions.

Respondent, in support of his position that the jury may infer from the failure of the bell to ring on former occasions the lack of care on the part of the person in charge of the inspection and repair of the bell, cites us to *Lake Erie etc. R. R. Co.* v. *Howarth*, 73 Ind. App. 454 [124 N. E. 687]. There the complaint alleges certain facts with refer-

ence to the installation of the bell, its condition as to being out of repair and the length of time it had been in such condition. It also alleged that the bell did not give the warning for which it was designed. There was evidence which tended to show that the device which operated the bell was out of repair on the occasion in question and that such condition had existed for a long time prior thereto. This evidence the court held was ''admissible for the purpose of showing that appellant had, at least, constructive knowledge that the bell was not serving the purpose for which it was designed'' and ''further tends to show that this condition continued to exist for several months immediately following the accident to appellee.''

*McCarragher* v. *Rogers*, 120 N. Y. 526 [24 N. E. 812], decided by the New York court of appeals, cited by respondent, was a case where a boy was injured in a printing establishment where to do his work he was required to sit on a table two feet in width extending across the end of a machine. The employer's attention had been called to the fact that a boy similarly employed had been injured three months before. The court held this evidence was admissible. In *Long* v. *John Breuner Co.*, 36 Cal. App. 630 [172 Pac. 1132], also cited, it is held that evidence of previous accidents on an incline in front of the entrance to the store, which was a fixed visible condition, was admissible as notice to the owner of the dangerous character of the entrance.

In the present case there is no evidence tending to show that the signal bell was out of repair. On the contrary, the evidence offered by defendant, which is the only evidence on the question, is that the bell was in good condition. Also is the evidence of inspection undisputed, and the evidence of the failure of the bell to ring on various unlocated times in a spread of years prior to the accident did not tend to prove lack of care and inspection at or near the time in question. If the bell had failed to ring within a time approximate to the accident and such failure had been noted by the witnesses testifying to the failure of the bell to ring on former occasions, the probability is, with the fact of the accident to direct their memory to such failure, that they could have fixed the time when such signal failed to function at least with some degree of certainty.

As to appellant's assignment of error in the giving and refusing of certain instructions, we think that taking the instructions as a whole, they sufficiently presented the law. It may, however, be said that the instruction given in the language of section 486 of the Civil Code, relative to the duty of placing a bell of at least twenty pounds weight on the locomotive to be rung at certain distances, etc., is not within the issues raised by the complaint; it is, however, a mere abstract statement of law, and while the giving of the instruction would not of itself call for a reversal, it should not have been given.

The record failing to disclose a want of ordinary care and diligence on the part of defendant to keep the automatic crossing bell in good working order as alleged by plaintiff and on whom the burden rests of proving such want of ordinary care, the judgment must be reversed, and it is accordingly so ordered.

Tyler, P. J., and Knight, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 28, 1928.

All the Justices present concurred.