## SOUTHERN PAC. CO. v. KAUFFMAN et al.
### No. 6247.

Circuit Court of Appeals, Ninth Circuit.
May 8, 1931.

Guy V. Shoup, Dunne, Dunne & Cook, Christian F. Kimball, and Thomas B. Dozier, all of San Francisco, Cal., for appellant.

Lionel B. Benas, Edward S. Bell, Kilpatrick & Goodman, Frank E. Kilpatrick, and Booth B. Goodman, all of Oakland, Cal., for appellees.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

The appellee was severely injured in a collision between an automobile in which he was riding and a passenger train of appellant's, occurring at approximately 2 o'clock p. m. July 19, 1927, about one mile east of Los Banos, Cal., at a grade crossing known as Canal Farms Crossing. At the time of the collision, the appellee was asleep upon the back seat of the Dodge car, which was being driven by his mother. With the mother in the front seat was appellee's father, and in the rear of the car with appellee were his five brothers and sisters. At the point of collision the railroad crossed near the point of intersection of the center lines of two highways which were at right angles with each other. The wigwag crossing signal established by the appellant at the crossing had two arms at right angles to each other, operating in planes perpendicular to the respective highways and was situated in the intersection of the highways and upon the railroad right of way. The highway upon which the Dodge automobile was being operated by appellee's mother was a main thoroughfare 60 feet wide, paved with concrete surface 16 feet wide. It intersected the appellant's railroad at an angle of about 30 degrees (29° 45'). The automobile was approaching the intersection from the east, and the railroad train from about west-northwest, making the angle of approach 150° 15'.

Appellee stated his cause of action against the Southern Pacific Company in three counts. The first count alleges that the appellant negligently operated and maintained the train on its railway tracks, and negligently collided with the automobile in which the appellee was riding. The second count alleges that the appellant negligently per-

mitted trees and shrubbery to grow upon its right of way near said crossing in places which obstructed the view of drivers of automobiles upon the highway, and that these obstructions prevented appellee's mother from having a view of defendant's tracks and trains thereon before driving upon the crossing. The third count alleges that the defendant negligently and carelessly permitted the electric wigwag signal maintained at the crossing to become out of repair to such an extent that the said signal failed to work or operate as a signal device. Such failure was assigned as the proximate cause of the accident.

The questions at issue are as to whether or not the whistle of the passenger train was blown as a warning upon approaching the crossing; as to whether or not the locomotive bell was rung; whether or not the bushes which it was claimed obstructed the view of plaintiff's mother toward the approaching train in fact did so, and, if so, whether or not such trees and bushes were upon the right of way of the railway company; and whether or not the wigwag was in actual operation immediately before and at the time of the collision, and, if not, whether its failure to operate was due to negligence in its maintenance.

It appears from the evidence that the train was being operated at from 25 to 30 miles per hour, that until the instant of the accident the attention of appellee's father was wholly directed to the examination of a road map, and that he did not observe the locomotive until the automobile was on the railroad track and immediately in front of the locomotive. The accident occurred in broad daylight on a clear day. The crossing was marked not only by the usual railway crossing signal, two bars at right angles forming an X, mounted on a vertical post, and marked "Railroad Crossing, Look Out for the Cars," but also by a circular disc mounted on a pole with the letters "R. R." and two heavy lines intersecting at right angles upon the disc 300 feet from the crossing, as required by the California Vehicle Act (Cal. Stat. 1923, pp. 517, 555, § 117). The wigwag was in a conspicuous position to warn travelers upon the highway, and was plainly visible for a long distance before the crossing was reached; the line of telegraph poles and wires along the railroad also indicated the crossing. At the crossing was the usual cattle guard. The paving in the highway approached the tracks at a slight grade, plainly visible as one approached upon the highway. The highway and railroad were straight for a long distance as the automobile and railway train approached the crossing. According to the testimony of the appellee's father and the fireman of the locomotive, the Dodge car stopped at a distance of 15 feet from the railway track. At that time the locomotive of the passenger train, which collided with the automobile, was about 100 feet from the crossing and within less than three seconds thereof. The Dodge car started forward "jerkily" and stopped, or nearly stopped, or stalled, on the track immediately in front of the locomotive, and the collision occurred almost instantly thereafter. Appellee's father testified that his attention was attracted by the stopping of the automobile in which he was riding, that it started forward "jerkily," that he glanced downward and saw his wife's hand on the emergency brake, and that when he looked up the locomotive was towering above him and the collision occurred almost at that instant. A truck was following the Dodge car in question at a distance of about 100 feet, and was driven by appellee's brother, who testified that he was observing the car driven by his mother and also observing the wigwag; that he saw the Dodge car come to a complete stop and then go forward. He testified that the wigwag was not operating at that time, and it is upon his testimony that appellee largely depends to establish the charge of negligence in taking care of its wigwag signal at that crossing. The fireman of the locomotive also testified that the automobile came to a complete stop before it reached the crossing and that it then moved forward. There is no testimony that the automobile did not stop, although, for purposes of impeachment, a statement made by the fireman in the report of the accident to the company was produced. While this statement was consistent with the idea that the automobile never came to a complete stop, it was not entirely inconsistent with the proposition that the automobile stopped and started up. Assuming that this statement of the fireman conflicted with his testimony, its utmost effect would be to eliminate his testimony on that subject which had corroborated that of the appellee's father and brother. Such a statement would not be competent evidence of the facts therein stated so as to create a conflict with the testimony of appellee's father and brother to the effect that the automobile in which appellee was riding came to a full and complete stop before reaching the railroad tracks. The father testified that this stop occurred while the automobile was at a point

15 feet from the railroad tracks. The testimony of the fireman confirms this as the point at which the automobile stopped. The testimony of the son is not inconsistent with that of the father as to the point where the automobile stopped.

We will first deal with the cause of action based upon the charge of negligence in the maintenance of the wigwag and in allowing it to get out of repair. The only evidence that the wigwag was out of repair is that of the appellee's brother, who testified that the wigwag was not operating at the time of the accident. We do not overlook the testimony that some one was seen on the wigwag signal the next morning after the accident, or the evidence that fire was seen near its conduits that same afternoon. It was so constructed that it should operate. But it has been properly held that the mere failure of such a wigwag to operate automatically upon the occasion of an accident is not evidence of negligence on the part of the railroad company. Vaca v. S. P. Co., 91 Cal. App. 470, 267 P. 346; Kingsbury v. B. & M. R. R., 79 N. H. 203, 106 A. 642, 643. It is proper to consider the fact, if it be a fact, that the signal did not operate, in measuring the care exercised by the traveler in negotiating the crossing, and it is therefore relevant on the question of contributory negligence, but, without more evidence tending to show negligence in the maintenance of the wigwag, it is insufficient to establish such negligence. To rebut any inference of negligence which might arise from the failure of the wigwag to operate at the time and place in question, the appellant, although claiming and introducing many witnesses to establish that the wigwag did operate properly at the time of the accident, presented the testimony of the inspector whose duty it was to inspect the signal, and this witness testified that he had inspected the apparatus daily for many days previous to the accident and found and reported that the apparatus was working properly. He also testified that the day after the accident he made a careful inspection and test of the signal and it was working perfectly, and that there was no defect in it. At this juncture appellant offered a witness who frequently used the highway at this crossing and sought to prove by him that for a considerable period of time previous to the accident the wigwag was working properly. The witness testified that he crossed the track at this crossing "quite often before July 19, 1927; that he crossed on an average of once a day, and sometimes two or three times a day; that he had occasion to cross there when a train was approaching the crossing several times." He was then asked: "When there was a train approaching was or was not the wigwag working?" This was objected to as immaterial, irrelevant and incompetent; whereupon counsel stated the purpose of the evidence as follows: "We deem it the law of the state of California that our obligation is to maintain that wigwag without negligence in its maintenance; that an isolated failure to work is not necessarily indicative of negligence. Our duty is to maintain it so that it operates and functions normally. For that reason, we propose to show, if we can, a general use of the wigwag over a period of months or years preceding this time, and the uniform operation of the wigwag during that period of time." Whereupon the court ruled as follows: "Suppose the other side desire to introduce evidence that it did not operate, or evidence tending to show that it did not operate regularly, I think that evidence would not be admissible. And I think this is inadmissible. The objection is sustained."

Appellant excepted thereto. Later the appellant offered other evidence thereon as follows:

"Mr. Durst. If the Court please, we have some other witnesses, Mr. Alred, Mr. Stewart, Mr. Cluffo, and Mr. Starkes, whose testimony would go to the general condition of the maintenance of that wigwag. They are stage drivers and truck drivers in that vicinity who frequently have been over it prior to the accident. As I understand the Court's ruling when that question was asked of this last witness, the testimony is not admissible. We will proffer them as witnesses and reserve an exception, if we may, to the question that would be asked similar to that other question. We do this in order to expedite the trial.

"The Court. Very well. Let it be understood that the witnesses are here and that you offer to place them on the stand, and ask them the same question with reference to the condition of the wigwag prior to the accident, and some time prior thereto. The plaintiff objects?

"Mr. Goodman. Yes, your Honor, the plaintiff objects, because they cover a long period prior to the accident, and not at the time.

"Mr. Durst. Prior to and subsequent to the accident.

"Mr. Goodman. These witnesses were not there at the time of the accident, were they?

"Mr. Durst. No.

"The Court. It is understood you object to that testimony?

"Mr. Goodman. Yes, on the ground that it is immaterial, irrelevant and incompetent.

"The Court. The objection is sustained.

"To said ruling defendant then and there excepted, and now excepts, and assigns the same as error."

■ The purpose for which the evidence was offered, as stated, was to show that the appellant did not neglect its duty in the maintenance of the wigwag. For such purpose evidence more remote from the time of the accident was admissible than for the purpose of showing the probability that the wigwag actually worked at the time of the accident, for both purposes the amount of such evidence and the period, before and after the accident, it may cover must rest largely in the discretion of the trial judge. The exclusion of this evidence, in so far as it tended to show that the wigwag actually operated to warn the plaintiff's mother, was within the sound discretion of the trial judge. But this evidence was offered for the purpose of showing that due care was exercised by the appellant in the maintenance of the wigwag, and it was clearly admissible for that purpose. It is true that the testimony of the inspector above referred to was sufficient, if believed, to establish due care on the part of the Railroad Company, but the question of negligence in maintaining the wigwag was submitted to the jury by the trial court (instruction No. 20). The jury were instructed that, if the wigwag signal was in bad condition and out of operation at the time of the accident, due to the negligence of the defendant in maintaining it or in failing to discover its condition by the exercise of reasonable care, and that the accident was proximately caused by the failure of the signal device to operate, the plaintiff was entitled to recover, unless he was guilty of contributory negligence. It was important upon this issue to supplement the testimony of the employees of the railroad company by the evidence of disinterested witnesses, if it could be done, and the railroad company sought so to do by the testimony of those accustomed to use the highway at this crossing. Evidence that the wigwag signal had worked continuously and properly for a long period of time before the accident would be relevant upon the question of the degree of care of the railroad company. It is clear that, if the evidence adduced by the witnesses offered by the railroad company had been to the effect that frequently and for long periods of time the wigwag had failed to operate as it was designed to do in order to warn travelers upon the highway, it would tend to show negligence on the part of the railroad company in maintaining the signal. Conversely, evidence to the effect that the wigwag was operating properly would tend to rebut the claim of negligence.

■ In determining the degree of care exercised before an accident, evidence as to the condition of the thing which caused the accident is admissible to establish due care or negligence as the case may be. In the Encyclopedia of Evidence, vol. 8, p. 913, § 6, it is stated: "Evidence that the defect that caused the injury existed a considerable time before the accident is admissible to show notice to the defendant of such defect." See Shearer v. Town of Buckley, 31 Wash. 370, 72 P. 76, by the Supreme Court of the state of Washington, where the issue was as to negligence of the town in maintaining a sidewalk. To the same effect, by the same court, in Falldin v. City of Seattle, 57 Wash. 307, 106 P. 914; to the same effect, in Hunt v. City of Dubuque, 96 Iowa, 314, 65 N. W. 319, where evidence of long standing defect in a sidewalk was held proper evidence to show constructive notice of the defect. Similarly to show lack of notice it was held that evidence of witnesses who frequently passed over the walk that they had noticed no defect and would have done so if such defect existed was held competent to show that there was no constructive notice of the defect. In Lake Erie, etc., v. Howarth, 73 Ind. App. 454, 124 N. E. 687, 127 N. E. 804, the question at issue was as to negligence in the maintenance of an automatic bell at a railway crossing. It was held that evidence that the bell did ring, and, conversely, that it did not ring, over considerable periods before the accident, was admissible, both to show whether or not the railway company had notice that the bell was out of repair, and less remote evidence upon the possibility or probability that it did or did not ring at the time of the accident. In Kingsbury v. Boston, 79 N. H. 203, 106 A. 642, 643, supra, it was held that evidence that an automatic crossing bell failed to ring at the time of the accident is not evidence of negligence, where the bell operated immediately before and a short time thereafter. The court there said: "The mere fact that the bell did not ring, if it is a fact, does not authorize the inference that its failure to do so was due to the defendant's negligence, since it is apparent it may have been due to

some cause for which the defendant was not responsible."

For analogous cases see District of Columbia v. Armes, 107 U. S. 519, 2 S. Ct. 840, 27 L. Ed. 618; Burke v. Witherbee, 98 N. Y. 562; Lafflin v. Buffalo, etc. Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; McCaldin v. Parke, 142 N. Y. 564, 37 N. E. 622; Colorado Mtg. & Inv. Co. v. Rees, 21 Colo. 435, 42 P. 42; McCarragher v. Rogers, 120 N. Y. 526, 24 N. E. 812; Calkins v. City of Hartford, 33 Conn. 58, 87 Am. Dec. 194; Alcott v. Public Serv. Corp. of N. J., 78 N. J. Law, 482, 74 A. 499, 32 L. R. A. (N. S.) 1084, 138 Am. St. Rep. 619. See, also, Wigmore on Evid. (2d Ed.) § 458, and notes; Fleming v. Northern Paper Mill Co., 135 Wis. 157, 114 N. W. 841, 15 L. R. A. (N. S.) 701; and extensive notes in 32 L. R. A. (N. S.) 1085, et seq.

The admissibility of evidence that a machine had worked properly for a long period of time before an accident is peculiarly appropriate where the only evidence of negligence in its maintenance is the circumstance that at the time of the accident it failed to work properly. See Memphis Street Ry. Co. v. Stockton, 143 Tenn. 201, 226 S. W. 187, and note thereon 22 A. L. R. 1471, 1473. While the range and extent of such testimony must rest largely in the discretion of the trial court, we are constrained to hold that the appellant was entitled to fortify the testimony of its employees by the evidence of disinterested witnesses offered and to cover a reasonable period before the accident by such testimony.

The ruling upon the offering of this testimony was erroneous. If the issue as to negligence in maintaining the wigwag had been withdrawn from the jury and the question submitted to the jury had been solely as to the effect of the stoppage of the wigwag upon the appellant's claim of contributory negligence, we might hold that the ruling rejecting this evidence was not prejudicial to the appellant. But where the issue of negligence in the care of the signal device was submitted to the jury notwithstanding the objection of the appellant and notwithstanding the fact that there was no affirmative evidence of negligence sufficient to justify its submission to the jury, we must hold that the rejection of this testimony tending to affirmatively establish that the wigwag was and for a long period had been in good working order, was prejudicial as well as erroneous.

Appellant claims that the court erroneously denied its motion for a directed verdict on the count charging negligence in the care of the wigwag signal. If this motion had been separately presented, it should have been granted (Wilmington Star M. Co. v. Fulton, 205 U. S. 60, 27 S. Ct. 412, 51 L. Ed. 708), but the motion was for a general verdict in favor of the defendant on all counts and was properly denied if on any count or charge of negligence alleged the jury could find a verdict for the plaintiff under the evidence. The question was not raised by any other requested instruction.

In view of a new trial, we deem it necessary to consider the question presented by the contentions of the parties with reference to the claim that the negligence of the appellee's mother in operating her automobile at the crossing was the sole proximate cause of the accident, and that therefore the negligence of the appellant, if any, was not a proximate cause thereof. Appellant's contention as to the law and facts with relation to this question can best be stated by quoting from its brief as follows:

"On any view of the evidence she stopped at a point fifteen feet from defendant's track. This was beyond the bush and the pole. This was at a point from which she had an unimpaired view of defendant's track in the direction from which the train was approaching, all the way to Los Banos Station. Further, it cannot be disputed that at this time the train itself was in plain view. At this point, and with this approaching train so in view, she either did not look before driving in front of the train, or having looked and seen the train she attempted to cross immediately in front of it. Under either hypothesis she was guilty of negligence proximately causing the resulting accident. No discussion of the proposition that failure to look when looking would have disclosed an approaching train is necessary. And as the Supreme Court of California has epigrammatically stated the rule, as to seeing the train and attempting to cross in front of it, 'to make such attempt and fail is conclusive evidence of negligence.' * * *

"There is here only one rational explanation of the accident, and that is that Zella Kauffman stopped, saw the approaching train, and attempted to cross in front of it. Her machine was stopped by her at a point where she could see the approaching train. The train was then plainly within her view. She did not stop as a matter of idle curiosity,

nor for any reason other than that she was approaching a railroad track of the presence of which she had been warned by an advance railroad crossing sign, by a standard railroad crossing sign at the crossing itself, by a wig-wag signal, whether working or not, which was plainly within view, and, lastly, and above all, by the tracks themselves. S. P. Co. v. Day (C. C. A.) 38 F.(2d) 958; Holmes v. S. P., etc., 97 Cal. 161, 31 P. 834. When she stopped in heed of such warnings she stopped for only one purpose, and that was to ascertain whether or not the crossing at that point and at that time could be made in safety. There was one sure way of ascertaining that fact, and that was by looking. She stopped to look and did look, and in looking she saw defendant's approaching train (the law so presumes—Young v. S. P. Co., 189 Cal. 746, 754, 210 P. 259) and attempted to cross in front of it. Indeed, she almost succeeded. The train struck only the rear end of her automobile. Had her automobile been operating properly she probably would have crossed safely. As it was the engine must have been balked and almost died—it was not running smoothly, for when she started again the machine went forward with a jerky motion. The responsibility for this failure of the automobile to carry its driver and the other occupants across in safety is one which must rest on her shoulders alone—this responsibility cannot be shifted to the defendant railroad company. * * *

"It does not lie in the mouth of the plaintiff to now urge that this duty was neglected. The law and the legal presumptions (Young v. S. P. Co., supra) as well as the facts point conclusively to the proposition that she looked and saw the train. * * *

"The significance of the fact that the negligence of the driver of the automobile in this case was in crossing in front of an approaching train with knowledge that that train was approaching is that it makes any charged negligence on the part of the defendant railroad company remote and not proximate."

On the other hand, the view of the appellee on the law and the facts is thus stated in his brief: "We then have the presumption, always present, that the deceased used ordinary care for her own safety. Taking this, in conjunction with the other testimony of both plaintiff's and defendant's witnesses that she stopped and then started, it is fair to presume that she noticed that the wigwag was not working, the bushes obstructed her view, and not hearing any whistle or bell, was lured by defendant's negligence and started again."

But the evidence establishes without conflict that the automobile was stopped at or about the point within 15 or 20 feet of the track, and that the driver of the automobile was able to see an approaching train from that point. The appellee's father, who was sitting on the front seat of the automobile, on the righthand side, testified upon his direct examination that the automobile came to a stop 15 feet from the track. He figured the 15 feet from the front of the machine. He testified that as he looked the ground over afterwards "it would seem it was just about 15 feet from the track when she tried to make the first stop." Appellee's brother testified that the next day he measured the distance from the track to the first obstruction to a clear view of an approaching train and that it was about 20 to 25 feet to the first obstruction. R. W. Stanard, an uncle of appellee's mother, who also measured the distance from the track to the first obstruction to the view, gave the distance as approximately 25 feet to some bushes about 8 feet high. The fireman on the approaching train testified he could see the whole automobile at the point where it stopped. The view was unobstructed. A series of photographs were introduced by the defendant, but apparently the exact position of the camera at the time each of the pictures was taken was not shown by any evidence other than that of the photographs themselves. They were taken the day after the accident. These pictures seem to show clearly that, after passing the line of telegraph poles along the railway right of way, the only obstruction to the line of vision between the automobile and the approaching locomotive was a pole carrying a power line at the base of which, on the edge of an irrigation ditch, was a small clump of willows which the witness estimated to be about 8 feet high. The photographs show that before arriving at this point, and immediately after leaving it, the driver of an automobile would have clear opportunity to see an approaching train if, as is claimed, his view was obstructed momentarily by the very highest branches of the bush as he passed it.

The court instructed the jury in accordance with the appellant's theory of the law, in effect that, unless the deceased stopped her automobile at a point where her view was obstructed, there could be no recovery either by the plaintiff for his injuries or by her husband and children for her death. That instruction is as follows: "If you believe from the evidence that the automobile approached to a point within fifteen feet of the track,

slowing down as if to stop, and that from such point the driver of the automobile had a clear and unobstructed view in the direction of the approaching train and that she saw, or had she looked she would have seen, the train approaching when she left such point and proceeded over the railroad crossing in said automobile, then I instruct you that the proximate cause of said collision was the negligence of the driver of said automobile, and your verdicts must be for the defendant, Southern Pacific Company, in both cases."

This instruction, in our view, was erroneous so far as the appellee is concerned, for the reason that in determining whether or not the negligence of the railroad company was the proximate cause of the injury the fact that the driver of the automobile was also negligent is not a determining factor. The negligence of both may have been concurrent, co-operating to cause the injuries to the appellee. If the driver of the automobile saw the approaching train in time to stop, any negligence of the railway company in failing to give notice of the approach of the train would no longer be an operating cause for the injury. If, however, she did not see the approaching train, although she might have done so by looking, and, in ignorance of the fact that it was approaching, moved forward to the point of collision, the failure of the railway company to give warning of the approach of the train tending to contribute to her ignorance, and therefore to the disaster, would be a proximate cause of the injury.

In view of the necessity of a new trial of this action we note another assignment of error. Appellant sought an instruction to the effect that, if the appellee were asleep on the back seat of the automobile, he was not exercising ordinary care. We think that the court properly left this question to the jury, and that appellant's instruction No. 36 was properly refused, and the court's instruction on that subject, excepted to by the appellant, was properly given. The general effect of this instruction is indicated by the following sentence contained therein: "Whether in this case he did exercise such care is a question for you to determine, having in mind that he was 13 years of age at the time of the accident."

Judgment reversed.

SAWTELLE, Circuit Judge, concurs.